The People *v.* McWhorter.

---

OTSEGO GENERAL TERM, November, 1848. *Shankland, H. Gray, Mason, and Morehouse,* Justices.

## THE PEOPLE *vs.* MCWHORTER.

The rule which imposes upon a party the obligation of producing evidence which will contradict, or explain, circumstantial evidence against him, requires him to do so only when he is pressed by circumstantial proof, and has it in his power to destroy its apparent force.

Before the absence of evidence can affect a party accused, it must appear that there is evidence that would elucidate the matter in dispute, and that it is peculiarly within the knowledge of such party. Then if he is pressed by the force of circumstantial evidence and does not produce the evidence within his power, it may afford a strong presumption against him.

A party accused is not bound, in order to avoid a presumption against him arising from circumstantial evidence, to produce as witnesses persons who may, by possibility, have knowledge on the subject. He need only produce those who are proved to have been so circumstanced as to justify the conclusion that they must have knowledge which, if divulged, would throw light on the subject.

The People *v.* McWhorter.

CERTIORARI to the general sessions of Cortland county. The defendant was indicted for malicious mischief, in beating and wounding a horse belonging to one Short. The evidence against him was entirely circumstantial. His mother was examined as a witness in the prisoner's favor, and testified to facts showing a very strong probability that he was at home during the whole of the night in which the offence was committed, and that he therefore could not have been the person who did the act. It appeared from the mother's testimony that the sister of the defendant, on the night when the offence was committed, slept in the room under that occupied by him, and adjoining the one through which he must pass, in going to and from his room ; and that his two younger brothers slept in a room adjoining his, and through which he must pass in going in and out of his room. But neither the sister, nor the brothers, of the accused were examined as witnesses. And there was no evidence to show that they were awake or had any knowledge on the subject. Various exceptions were taken by the accused to the decisions of the court made during the trial, and to the judge's charge to the jury. It is unnecessary, however, to refer to any of those exceptions, other than the one mentioned in the opinion of the court. The jury found the prisoner guilty. The prisoner filed a bill of exceptions, and thereupon the indictment was removed into this court by a writ of certiorari sued out by the district attorney.

*A. L. Ballard,* (district attorney;) for the people.

*R. O. Reynolds,* for the prisoner.

*By the Court,* H. GRAY, J. The only question of importance presented by the bill of exceptions, arises upon the exception taken by the counsel for the accused, to that part of the charge of the court in which, after charging that the prisoner must be convicted, if at all, upon the strength of the proof against him, he told the jury " that this rule did not relieve him from the necessity of explaining any circumstances against him, and the jury might take the fact that the prisoner had

not called his sister and brothers into consideration in making up their verdict, and if they were convinced that they were kept back, because they would not corroborate their mother in regard to the prisoner's leaving the room on the night of the 29th Sept. then that was a circumstance against him."

The rule which imposes upon a litigant the obligation of producing evidence, which will contradict or explain circumstantial evidence against him, requires him to do so only when he is pressed by circumstantial proof, having it in his power to destroy its apparent force. (1 *Cowen and Hill's Notes,* 310, *and cases there cited.* 1 *Starkie,* 34. 3 *Id.* 487.) Before the absence of evidence can affect the accused, it must appear that there is evidence that would elucidate the matter in dispute, and that it is peculiarly within the knowledge of the accused; and then if he is pressed by the force of circumstantial evidence and does not produce the evidence within his power, it may afford a strong presumption against him. According to the literal interpretation of the charge, if the jury had been convinced that the sister and brothers of the accused would fail to corroborate their mother, for no other reason than the want of knowledge on the subject, and were therefore left at home, or " kept back," then their ignorance would be a circumstance against him. If the literal be the fair construction of the charge, then it is manifestly erroneous. The court could not have intended to be thus understood. I shall assume that they intended to instruct the jury, that if they were convinced that the sister and brothers were not produced because they disagreed with, and therefore would not corroborate their mother, that their absence was a circumstance against the accused. Without having knowledge upon the question whether the accused " left his room on the night of the 29th of September," they could not have disagreed with their mother in that respect; and hence the question is as to their knowledge whether the accused left his room that night.

The sister, on the night referred to, slept in a room under the bed room of the accused, and adjoining the one through which he passed in going to and from his room, and the brothers slept

in a room adjoining the one in which the accused lodged, and through which he passed in going in and out of the one in which he slept. The age of the sister is not shown. The youngest brother was about nine years old, and the eldest, the next child in the family, older. There is no evidence in the case that the sister, or either of the brothers, was awake at any time during that night. And hence there is none that they knew whether or not the accused left his room on that night, except such as is to be inferred from the fact that his passing in and out would have awakened them. The youngest brother was at that time weakly, but whether wakeful on that account, or not, does not appear; and in relation to the wakefulness of the others there is no evidence. Suppose these three persons had been produced and sworn, and each of them had testified that soon after they went to bed that night they fell asleep and did not wake until sunrise next morning. What effect would such evidence produce upon the minds of an intelligent jury? Would they believe that the accused did not pass out of the room, because his sister and little brothers were not awakened by the noise, or would they say that their evidence was not in any degree inconsistent with the guilt of their brother, who was well acquainted with the house in which he slept and with the liability of the inmates to be awakened by a noise, and that in passing out in the night, to commit an offence, he would be careful not to disturb, and make witnesses against him, those who were asleep. If they had been produced and had thus sworn, and such would be the effect of their evidence upon the minds of a jury—it follows that their absence should not be a circumstance against the accused. He was not bound to produce those who by possibility might have knowledge on the subject, to avoid a presumption against him. It is only those who are proved to be so circumstanced as to justify the conclusion that they must have knowledge which, when divulged, would throw light on the subject. There is no evidence to warrant the presumption that these persons—the sister and brothers of the accused—knew whether or not the accused left his room on the night of the 29th of September;

and hence that question should not have been submitted to the jury. It is impossible to say what effect the submission of that question had upon the minds of the jury. It may have induced them to disbelieve the mother of the accused. It was erroneously submitted, and the judgment of the general sessions must be reversed, and a *venire de novo* issue.

---

SAME TERM.   *Before the same Justices.*