## GULF, C. & S. F. RY. CO. v. ELLIS.

(Circuit Court of Appeals, Eighth Circuit. January 27, 1893.)

### No. 147.

1. RAILROAD COMPANIES—NEGLIGENCE—KILLING STOCK.
   On trial of an action against a railway company for killing a mare and filly, the evidence showed that where the filly was struck the track was straight and level, and one standing thereon at that point could see an animal on or near the track for over half a mile in either direction, and hoofprints showed that the filly had run on the track ahead of the engine 200 yards or more before she was struck. *Held,* that a verdict for plaintiff would not be disturbed.

2. SAME—BURDEN OF PROOF.
   Under the circumstances, the burden was on defendant to show any such special circumstances connected with the operation of the train as would have rendered it unsafe and impracticable to stop it or slacken its speed within the distance of 200 yards.

3. SAME—EVIDENCE—FAILURE TO PRODUCE WITNESS.
   Failure to produce the engineer as a witness to rebut the inferences raised by the circumstantial evidence would justify the jury in assuming that his evidence, instead of rebutting such inferences, would support them.

4. SAME—DUTY OF ENGINEER.
   It is the duty of the engineer of a railway train to keep a lookout for stock upon the track.

5. APPEAL—REVIEW—WEIGHT OF EVIDENCE.
   In common-law actions the circuit court of appeals will not review the facts, if there is evidence direct or circumstantial fairly tending to support the verdict.

In Error to the United States Court in the Indian Territory.

This was an action commenced in the United States court in the Indian Territory, third division, by C. W. Ellis, the defendant in error, against the Gulf, Colorado & Santa Fe Railway Company, the plaintiff in error, to recover damages for killing a mare and filly and crippling a colt by the alleged negligent operation of the defendant's trains. The answer was a general denial. There was a trial, and verdict and judgment for the plaintiff, and the defendant sued out this writ of error. Affirmed.

E. D. Kenna, J. W. Terry, and C. L. Jackson, for plaintiff in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

CALDWELL, Circuit Judge. The court below refused to give a peremptory instruction to the jury to find a verdict for the defendant as to the filly killed July 28, 1889, and this refusal is assigned for error. The evidence shows that the defendant's engine struck and killed the filly; that the track at the place where this was done was straight and level for half a mile or more in either direction, and that one standing on the track at that point could see an animal on or near it for that distance in either direction, and that the footprints of the filly showed that she had run on the track, ahead of the engine, 200 yards or more, before she was overtaken and killed. It was the duty of the engineer to keep a lookout for stock upon the track, and, when discovered, to use ordinary care to avoid injuring it. We are asked by the learned counsel for the plaintiff in error to declare as a matter of law, under the evidence in this case, that the defendant's engineer was not negligent in the discharge of the duty imposed upon him by this rule; and an extended brief is filed in support of this contention, which we have carefully considered. It is said there is no evidence to show that the train could have been stopped in a distance of 200 yards; that the distance within which a train can be stopped depends on the speed that it is going, the grade and condition of the track, the number of cars, and other conditions, and that the evidence fails to disclose any information on these matters; and with some emphasis the question is asked: "Will the members of this court undertake to say that a train of unknown speed, on a track which might or might not have been slippery, pulling a train that may have had five or fifty cars, could have been stopped in six hundred feet?" This court will not undertake to declare as a matter of law that a train, under the unknown conditions named, can be stopped in 600 feet, nor will it declare as a matter of law that it cannot be stopped in that distance. The declaration, if made either way, would be a mere expression of opinion on a matter of fact, and not a declaration of law, and would settle no principle of law, and have no binding force on this or any other court in any other case. The question is not one of law, but one of fact for the jury, who doubtless brought to its determination common sense, and the knowledge common to all, that the speed of a railroad train can ordinarily be slackened sufficiently in a distance of 200 yards to avoid running down a horse going at full speed on the track ahead of it. If

the special circumstances connected with the operation of this train at this time and place were such as to make it an exception to the general rule and render it unsafe and impracticable to slacken its speed, or stop it, the burden was on the defendant to show that fact. These were matters peculiarly within the knowledge of the defendant. Its engineer must have had actual knowledge on all these subjects. His deposition was taken by the defendant, but he was not asked to testify, and did not testify, on these subjects, and was not examined at all as to the killing of this filly.

There was satisfactory proof of circumstances tending strongly to show negligence, and from which we think the jury could rightfully infer negligence. The circumstantial evidence in the case is rendered more cogent, if not conclusive, by a well-settled rule of evidence. The facts in the matter in dispute rested peculiarly within the knowledge of the defendant, and it had in its power to show, by its engineer, what they were, and declined to do so. Now, it is a well-settled rule of evidence that when the circumstances in proof tend to fix a liability on a party who has it in his power to offer evidence of all the facts as they existed, and rebut the inferences which the circumstances in proof tend to establish, and he fails to offer such proof, the natural conclusion is that the proof, if produced, instead of rebutting, would support the inferences against him, and the jury is justified in acting upon that conclusion. "It is certainly a maxim," said Lord Mansfield, "that all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other side to have contradicted." Blatch v. Archer, Cowp. 63, 65. It is said by Mr. Starkie, in his work on Evidence, vol. 1, p. 54:

"The conduct of the party in omitting to produce that evidence in elucidation of the subject-matter in dispute which is within his power, and which rests peculiarly within his own knowledge, frequently affords occasion for presumptions against him, since it raises strong suspicion that such evidence, if adduced, would operate to his prejudice."

The same rule is applicable even in criminal cases. Com. v. Webster, 5 Cush. 295, 316; People v. McWhorter, 4 Barb. 438. That this court, upon the testimony in this case, should be seriously asked to reverse it, upon the evidence, implies, we think, a total misconception of the relative functions of the court and jury in this class of cases.

In common-law actions tried to a jury this court cannot review or retry the facts. If there is any evidence, direct or circumstantial, fairly tending to support the verdict, it must stand. Every presumption is in its favor, and all doubts must be resolved in its favor. This court will not weigh or balance the evidence. And in cases like the one at bar, which turn on the question whether the party exercised ordinary care or was guilty of negligence, after the usual and appropriate definitions of those terms by the court, it is the province of the jury to say, from a consideration of the evidence, whether in the particular case ordinary care was exercised, or whether there was negligence. In other words, what is ordinary care, or what is negligence, in the particular case, is a question of fact for the jury, and not of law for the court. Rail-

road Co. v. Stout, 17 Wall. 657, 663, 664; Jones v. Railroad Co., 128 U. S. 443–445, 9 Sup. Ct. Rep. 118; Railway Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. Rep. 679; Railroad Co. v. Foley, 53 Fed. Rep. 459; Pol. Torts, 386 et seq. But, in the trial of every case before a jury, there comes a time when it may be the duty of the court to decide, as a matter of law, whether there is sufficient evidence for the jury to found a verdict upon. If there is not, the practice in the federal courts is to instruct the jury to return a verdict for the defendant. Railway Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. Rep. 569. But the case should not be withdrawn from the jury unless the conclusion follows, as a matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish. Railway Co. v. Cox, 145 U. S. 593, 606, 12 Sup. Ct. Rep. 905. And in cases involving the question of negligence, the rule is now settled that "when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered one of law for the court." Railway Co. v. Ives, supra. The presumption is that jurors are reasonable men, and that the trial judge is a reasonable man, and when the judge and jury who tried the cause concur in the view that the evidence establishes negligence, every presumption is in favor of the soundness of that conclusion. The whole fabric of our judicial system is grounded on the idea that jurors are better judges of the facts than the judges. By the constitution of the United States, and by the constitutions of all the states of the Union, juries are made the judges of the facts in all common-law actions. These constitutional provisions are founded on centuries of experience, and every day's practice confirms their wisdom. It may be said of our constitutional provisions on the subject of juries, as it has been said of the British constitution, that juries "are, as it were, incorporated with our constitution, being the most valuable part of it." Jac. Law Dict. tit. "Jury."

It was because the people thought the judges were poor judges of the facts that they committed their decision to a jury. Undoubtedly juries sometimes err in deciding the facts, but their errors are trifling in number and extent compared with the errors of the judges in deciding the law. The numerous appellate courts of the country are engaged principally in correcting their own and the errors of other courts on questions of law. The mistakes of juries take up very little space, comparatively, in the enormous volume of law reports with which the country is being deluged. In their deliberations upon the facts of the case they are at liberty to exercise their common sense and practical experience and knowledge of human affairs, untrammeled by the excessive subtilty, overrefinement, and the hair-splitting of the school men which have crept into the administration of the law by the courts to such an extent as to sometimes bring it into reproach. It is not by such modes of reasoning that the soundness of a verdict of a jury is to be tested. It is not, there-

fore, any ground for disturbing the verdict of a jury that the court would not have rendered such a verdict. It must appear that all reasonable men would agree that it was not supported by the evidence, and should be annulled. The constitutional right of the citizen to have the facts of his case tried by a jury must not be encroached upon by the courts, under any pretext. "It is of the greatest consequence," said Lord Hardwick, "to the law of England, and to the subject, that these powers of the judge and jury be kept distinct; that the judge determine the law, and the jury the fact; and if ever they come to be confounded it will prove the confusion and destruction of the law of England." Rex v. Poole, Cas. t. Hardw. 28. It is of equal consequence to the laws of this country and its people that the separate powers of the judge and jury be sedulously maintained.

The court charged the jury that it was the duty of the engineer to keep a lookout for stock upon the track. The correctness of this charge is no longer an open question in this court. Railway Co. v. Washington, 4 U. S. App. 121, 1 C. C. A. 286, 49 Fed. Rep. 347; Railway Co. v. Johnson, 54 Fed. Rep. 474.

The judgment of the court below is affirmed.