## AMERICAN NAT. BANK v. NATIONAL WALL-PAPER CO.[1]

(Circuit Court of Appeals, Eighth Circuit. November 5, 1896.)

### No. 718.

**1. PLEADING—ELECTION BETWEEN COUNTS.**

When a cause of action is stated, under different aspects, in two counts,—the one alleging that the defendant corporation owned and controlled another corporation, and agreed to pay for goods sold it; and the other alleging a sale directly to the defendant, which was sought, under either count, to be held primarily liable,—it is not error to refuse to compel the plaintiff to elect between the counts.

**2. ASSIGNMENTS OF ERROR—RULINGS ON EVIDENCE.**

Assignments of error in the admission of evidence, which, when they relate to the questions, do not show the questions were answered, and, when they relate to the answers, do not show what the answers were, are not in conformity to rule 11 of the circuit court of appeals (11 C. C. A. cii., 47 Fed. vi.), and cannot be noticed.

**3. CORPORATIONS—ESTOPPEL—NATIONAL BANKS.**

A national bank purchased the stock of a dealer in wall paper at a sale under an execution in its favor, and afterwards organized a corporation to take and dispose of this stock, such corporation being managed by the officers of the bank, and controlled by it. In order to dispose of the stock with advantage, new stock was purchased on credit, the bank, through its cashier, informing the seller, upon inquiry, of the relation between the bank and the corporation, and that the bank would see that the bills were paid if the goods were sold. *Held* that, whether or not it was within the powers of the bank to purchase new stock to help the sale of that bought on execution sale, the bank, having received and appropriated the proceeds of the goods purchased, was estopped to set up, in a suit for the price, a want of power to make the purchase.

**4. INTEREST—VERDICT—JUDGMENT.**

When a jury returns a verdict for the principal of a plaintiff's demand, "with interest at 6 per cent.," and the plaintiff, if he recovers at all, is certainly entitled to interest from the commencement of the action, judgment should be entered on such verdict for the amount of the principal and interest from the commencement of the action.

In Error to the Circuit Court of the United States for the District of Nebraska.

The American National Bank of Denver, the plaintiff in error, was a creditor of A. Gauthier, a wall-paper and paint merchant doing business in Denver, in a sum exceeding $14,000. To secure payment of this sum, the bank attached the entire stock of its debtor, which was afterwards sold under the attachment by the sheriff, and purchased by the bank, or by one of the bank's agents or officers in trust for the bank. Not being able to effect a lump sale of the stock, the bank was compelled to sell the goods at retail, and to secure a proper agency for that purpose it caused a corporation to be or-

[1] Rehearing denied December 21, 1896.

ganized, styled the A. Gauthier Decorating Company, to whom it turned over the stock, to be managed and sold for the benefit of the bank. To work off the old stock successfully, it was necessary to buy fresh goods from time to time. These fresh goods were ordered in the name of the bank's dummy corporation, namely, the A. Gauthier Decorating Company, from the defendant in error. The following is a copy of the heading of one of these orders:

"Ordered of Creswell & Washburn.
  "By A. Gauthier Dec. Co.
    "Bundles.
"Soon as possible.                                    Denver, Col.
  "Via any way.                       · Run by American National Bank."
Here follows a description of the goods ordered.

On receipt of the first .order, and before filling the same, the defendant in error addressed to the A. Gauthier Decorating Company, the following letter:

"National Wall-Paper Company, 1286 Broadway.

"New York, N. Y., Oct. 3, 1892.
"The A. Gauthier Dec. Co., Denver, Colorado—Gentlemen: Your order to Creswell & Washburn branch of the National Wall-Paper Company has been referred to the credit department for action. We would be pleased to have you let us know if the American National Bank is responsible for the purchases of your company, and, if not, what the present condition of your affairs are.
"Yours, truly,                    National Wall-Paper Co., Credit Mn'gr."

Thereupon the following correspondence took place between the defendant in error on the one side and the plaintiff in error and the A. Gauthier Decorating Company on the other:

"Telephone 621.
"The A. Gauthier Decorating Co., 916–918 Fifteenth St.

"Denver, Colo., Oct. 7th, 1892.
"National Wall-Paper Company, 1286 Broadway, N. Y.—A. H. Hamilton, Credit Manager: Replying to yours of Oct. 3rd in re our order to the Creswell-Washburn branch of the National Wall-Paper Co. If you are not satisfied with statement and assurances given you by the American National Bank, let us know what discount you will make for cash, and, if we find it impossible to do business with you on a credit basis, we will see if we can do business with you on a cash basis.
"Yours, etc.,                      The A. Gauthier Decorating Co.,
                                    "By .C. Westervelt, Sec'y and Trea'r."

"National Wall-Paper Co., 1286 Broadway.

"New York, N. Y., Oct. 10, 1892.
"The A. Gauthier Dec. Co., 916–918 Fifteenth Street—Dear Sirs: We have yours of the 7th, and contents noted, but we do not exactly understand your position, as we hav·' no statement or assurances of any kind from the American National Bank. If the bank will make a statement to the effect that they are responsible for the bills of the A. Gauthier Dec. Co., we will be pleased to ship the goods and bill for our regular terms.
"Yours, truly,              National Wall-Paper Company, Credit Mn'gr."

"American National Bank of Denver.    Capital, $1,000,000.

"Denver, Colo., 29th Sept., 1892.
"Messrs. Creswell & Washburn, 18th and Washington Ave., Philadelphia, Pen.—Gentlemen: Your letter of the 26th instant to the A. Gauthier Decorating Company has been referred to me, and I will say that this company is perfectly solvent, and at its request I will state that the amount of the bill for the order, a copy of which is inclosed, will be paid by us when approved by the company in case they do not pay it.
  "Yours, truly,                            Howard Evans, Cashier."

"October 24th, 1892.

"Mr. Howard Evans, Cashier, Denver, Colo.—Dear Sir: Your favor under date of Sept. 29th to the Creswell & Washburn branch has been referred to this office, and in accordance with the condition therein we have accepted all the orders from the various branches of the company for the A. Gauthier Dec. Co. received to date. We do this with the understanding that your bank is responsible for the payment of the bills of all orders made to date.

"Yours, truly,                    National Wall-Paper Co., Credit Mn'gr."

"The American National Bank of Denver.

"Denver, Colo., 27th Oct., 1892.

"National Wall-Paper Co., 1286 Broadway, New York—Gentlemen: Your favor of the 24th in reference to an order from the A. Gauthier Decorating Co. is received. I do not quite understand your letter. You say that you have accepted all the orders from the various branches of the company received from the A. Gauthier Decorating Co. I only know of one order that we agreed to become responsible for.

"Yours, truly,                         Howard Evans, Cashier."

"Oct. 31, 1892.

"Mr. Howard Evans, Cashier—Dear Sir: We are in receipt of your favor of the 27th, in which you state that your bank is responsible for only one bill of goods ordered by the A. Gauthier Decorating Company. We have received several orders from your company given to the several branches of the National Wall-Paper Company. We understood that your company owned and controlled this Co., and were responsible for these purchases. If we are mistaken in our supposition, and that you only desire to guaranty the payment of one bill ordered through the Creswell & Washburn branch, we will only ship the goods on that order, and will cancel the balance. Awaiting your instructions in the matter, we remain,

"Yours, truly,               National Wall-Paper Company, Credit Mn'gr."

"American National Bank of Denver.

"Denver, Colo., Nov. 4, 1892.

"A. H. Hamilton, Esq., 1286 Broadway, New York—Dear Sir: Your favor of the 31st received. In reply to same I will state that in my letter of the 27th ulto. I meant to say that we had only written about one order of the Gauthier Decorating Co. to Messrs. Creswell & Washburn. You are perfectly correct in your understanding that this bank controls, and virtually owns, the Gauthier Decorating Co., and you will be warranted in filling such orders as have been given by the manager of the company here. We are negotiating for the sale of the company's assets, but the bills will be paid whether we succeed in doing so or not.

"Yours, truly,                         Howard Evans, Cashier."

"Aug. 15, 1893.

"A. Gauthier Decorating Co., Denver, Colo.—Dear Sirs: Inclosed herewith we hand you statement of your account showing credits on the bills which were shipped you, and which you could not receive; also credit for your optional rebate. We trust it will be convenient for you to favor us with a check for the amount owing by return mail.

"Yours, truly,                    National Wall-Paper Co., Credit Mn'gr."

"American National Bank of Denver.

"Denver, Colo., Aug. 31, 1893.

"National Wall-Paper Co., 1286 Broadway, New York—Gentlemen: Your favor of the 15th of Aug. inclosing statement showing balance due of $3,-185.67. We have been very much disappointed in the wall-paper business, and somewhat behind on account of it. I write to ask if you will not accept a cash payment of three thousand dollars ($3,000.00) and cancel your claim against the A. Gauthier Decorating Co.

"Yours, truly,            The A. Gauthier Decorating ———— Cashier.
                                    "By Howard Evans."

"Sept. 4th, 1893.

"A. Gauthier Decorating Co., Denver, Colo.—Gentlemen: We are in receipt of your favor of the 31st ult., which has crossed our letter of the same date. In rendering you this statement, we have already given you 1 per cent. discount on $3,554.42 to which you are not really entitled. This is all the concession we can make in the matter.

"Yours, truly,                                         Credit Manager,
                                              "National Wall-Paper Co."

"Sept. 18th, 1893.

"The A. Gauthier Decorating Company, Denver, Colo.—Dear Sirs: Not hearing from you in reply to our letter of the 6th, we have this day drawn on you at sight for $3,166.40. With the request that you protect this draft, we beg to remain.

"Yours, truly,                                         Credit Manager,
                                              "National Wall-Paper Co."

"American National Bank of Denver.

"Denver, Colo., Sept. 22, 1893.

"National Wall-Paper Co., 1286 Broadway, New York—Gentlemen: Your favor of the 18th, inclosing draft on the A. Gauthier Decorating Co. for $3,166.40, has been received. I understand that it will be arranged for in a few days.

"Yours, truly,                                    Howard Evans, Cashier."

"October 17, 1893.

"Mr. Howard Evans, Cashier American National Bank, Denver, Colo.—Dear Sir: Under date of Sept. 22nd, you wrote that the affairs of the A. Gauthier Decorative Company would be adjusted in a few days. We wrote you on the 5th, calling your attention to the matter, but have heard nothing from you in reply. We would be pleased to hear from you by return mail as to when this account is to be settled.

"Yours, truly.                                         Credit Manager,
                                           "National Wall-Paper Company."

"American National Bank of Denver.

"Denver, Colo., October 25th, 1893.

"A. H. Hamilton, Credit Manager of the Nat. Wall-Paper Co., 1286 Broadway, N. Y.—Dear Sir: Your favor of the 17th received. I have seen the young man who manages the A. Gauthier Decorative Co., and think there is no doubt that he will be able to have the draft paid in a day or two. It will be taken care of without doubt before long, at any rate.

"Yours, truly,                                    Howard Evans, Cashier."

"American National Bank of Denver.

"Denver, Colo., Dec. 21, 1893.

"National Wall-Paper Co., New York City—Gentlemen: Owing to my absence from the city, your telegram of the 12th did not receive prompt attention. I now write to state that, as the A. Gauthier Decorating Company is already indebted to us in a considerable sum, we must decline to advance any further moneys on its account.

"Yours, truly,                                    Howard Evans, Cashier."

The goods were sold for account of the bank, and it received the proceeds.

On the 19th of October, 1894, this action was commenced in the circuit court of the United States for the district of Colorado by the defendant in error against the plaintiff in error to recover the value of the goods so sold. The complaint contains two counts. The first alleges the bank owned and controlled the A. Gauthier Decorating Company, and promised and agreed in writing that, if the plaintiff would sell the goods to the decorating company, it would pay for them; and the other counts on a direct sale of the goods to the bank. Motions were filed to strike out parts of the first count and to compel the plaintiff to elect between the counts, and a demurrer was interposed to the second count, all of which were overruled.

The answer denied the material averments of the complaint, and pleaded the statute of frauds to the first count. The bank did not, in its answer, disavow the authority of its cashier to act in the premises as he had done, or plead that the transaction was ultra vires, but raised these points for the first time on the trial. After the case had been at issue some time, and was about to be tried, the court refused to grant the defendant leave to file an amended answer. The court instructed the jury as follows:

"If this were a case in which the bank had agreed to pay the debt of some merchant here in town, the bank having no interest in his business,—I mean no ownership in the business carried on by the merchant,—there would be but little difficulty in determining the question in issue. In that case the guaranty of the bank whatever, if given with the assent of the directors and the president and all of the officers of the bank, would not prevail against it, because the bank, being organized for a banking business, the limits and extent of which are very well understood,—that is to say, it is well understood what falls within the general scope and character of a banking business,—would not be allowed to travel outside of that business in respect to guarantying the debts of strangers to the institution. But it is said that the case does not stand altogether in that light, and here come the questions of fact which are for your consideration. It is said that Mr. Gauthier, after whom this company was named, being in debt to this bank, was sued in attachment by the bank, and upon that suit his goods were sold, and the bank became the purchaser through Mr. O'Donnell. So far, I believe, there is no controversy, because the testimony here upon the stand was that Mr. O'Donnell bought the goods at the sale, and that it was for the bank. Matters went on, and a company was formed. It is said that this was done at the instance of the bank, with a view to make sale of the property which they had previously purchased under the attachment proceedings; that the bank set up this corporation, called it the A. Gauthier Decorating Company, and that the business was carried on by that company at the instance of the bank, and substantially for its benefit, with a view to enable the bank to make sale of this property, and meanwhile to continue the business of selling wall paper and of painting and decorating until such sale should be made. The evidence of this upon which the plaintiff relies is in various circumstances,—as that people connected with the bank were also connected with this company, which was to make purchases for carrying on the business and supply the deficiencies in the stock. Mr. Evans, the cashier, felt such interest in the proceedings that he was willing to guaranty one of the claims without question, and subsequently, when some question arose as to whether he had guarantied more than that one, he did, in effect, assume the payment of all; and, furthermore, in this final letter, in which he declared his intention to make payments for all the claims, he said, in effect, that this company was in fact owned or controlled,—I do not pretend to use the language of the letter, but it has been read a number of times in your hearing,—that it was, in effect, owned or controlled by the bank. Now, if all this is evidence to your minds that the bank was in this business in the name of that company, and thus, while matters were in that state, with a view to enable the company to proceed with its business, that it assumed the payment of these purchases from the plaintiff, then I say to you that the plaintiff may be entitled to recover; otherwise if it appear to you that this was an independent party proceeding in business without any interest on the part of the bank in its business,—that is to say, that the bank had no interest in its stock, and that the A. Gauthier Company was a stranger to the bank as other merchants in the city are strangers to it,—then I say to you, that there was no authority on the part of any one connected with the bank to make a promise of payment in respect to its bills. As to these promises, whatever they were, having been made by Mr. Evans, and apparently without the knowledge and approval of the directors of the bank and other officers of the bank, I think that, if the business was of the character which has been suggested,—that is to say, if the company was set up by the bank, and kept going at the instance of the bank,—that this business would fall as much within the ordinary duties of the cashier of the bank as any part of its business. The cashier of a bank is very largely its executive officer. Ordinarily, in the course of business of these banks, he is the party

who, more than any other, controls the affairs of the bank, and determines who shall have loans and who shall not, what payments shall be made and what shall not be made, and so on. I say, if matters were as it is suggested, if the evidence shows to your mind that this company was set up by the bank, and that the business of the company was carried on substantially in the name of the company by the bank, then I say to you that I think Mr. Evans' authority as cashier of the bank was full and complete, and that the concurrence of the directors in those matters was not at all necessary. It would be the presumption if such were the state of facts. It is in fact not the practice in these institutions, that every matter of business that comes up from time to time shall be submitted to the directors. At least that is not the practice here in the West. I believe that in the Eastern banks discounts are not made except under the direction of a committee of directors, or something of that sort. Somebody is authorized, other than the cashier or president of the bank, to approve of loans and the like; but, according to the course of business in these institutions here in the West, the business from day to day is done very largely, in many cases entirely, by the cashier of the bank; and under the circumstances, if the bank was, in substance, carrying on this business of the A. Gauthier Company with a view to the ultimate sale of this property, and thus to realize its debt which had accrued against Mr. Gauthier, then I think the authority of the cashier in the premises would be sufficient. Now, if these matters of fact do not appear to you as has been suggested,—in other words, if you do not think that the bank was interested in this company, and its substantial owner, and that these things were done quite apart from any such interest in that company,—then I say to you that the defendant is not liable in this case, and upon that you are authorized to find your verdict either, in favor of the plaintiff or of the defendant."

Thereupon Mr. O'Donnell, counsel for defendant, asked the court to charge the jury to the effect that, if the interest of the bank to which the court has referred was by reason of holding the capital stock of this company as collateral security for the payment of the debt, that that would not be such a carrying on of the business by the bank as would enable the bank to guaranty, as it is claimed it did, or authorize the cashier to act with respect to the matter on behalf of the bank. The court ruled thereon as follows: "Well, I assent to that proposition; but I think there is evidence before the jury to the effect that the interest of the bank was much more direct than that which you suggest as arising from holding the stock as collateral security."

The jury found a verdict in favor of the plaintiff for the full amount of its claim, and upon the rendition of judgment on the verdict the defendant sued out this writ of error.

T. J. O'Donnell (W. S. Decker and Milton Smith with him on brief), for plaintiff in error.

Chas. M. Campbell, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The court did not err in overruling the motion to compel the plaintiff to elect upon which count of the complaint it would go to trial. It is probable the plaintiff's cause of action could have been stated in one count, but the pleader conceived the transaction was of such a character as to make it an act of prudence to state it in two aspects. The first count alleges that "the defendant owned and controlled the A. Gauthier Decorating Company," and agreed to pay for the goods that might be sold to the manager of that company on credit; and the second count alleges a sale of goods to the defendant, without mentioning the A. Gauthier Decorating Company. We

think the averments of the first count, fairly construed, mean that the bank owned and controlled the A. Gauthier Decorating Company, and the business carried on in that name, and promised and agreed to pay for the goods sold to the manager of that company. So construed, the business conducted in the name of the A. Gauthier Decorating Company was the bank's business, and the two counts are, in legal effect, the same, and upon the proof in the case a recovery could be had on either. Under both counts the bank was the real debtor, and primarily liable, if liable at all.

The motion to strike out parts of the first count was rightly overruled. The clauses which it was desired to strike out were either material or surplusage. If material,—and we think they were,—they ought not to have been stricken out; but, if they were immaterial, their presence does no harm and is not prejudicial error.

The demurrer to the second count was rightly overruled. The plaintiff was not bound to anticipate the bank's defense. City of Fergus Falls v. Fergus Falls Water Co., 19 C. C. A. 212, 72 Fed. 873.

We have now disposed of the first four assignments of error. Assignments 5 to 37, both inclusive, relate to the admission of evidence over the defendant's objection. For the purpose of illustrating their character we here copy two of them:

"(7) The court below erred in permitting the witness Gauthier to answer the question, 'For whom did Mr. O'Donnell buy this stock?'" "(9) The court below erred in overruling the motion of the defendant to strike out the answer of the witness Gauthier to the question, 'Who was Ballentine?'"

The rest are similar to these two. Where they relate to the questions, they do not show the questions were answered; and where they relate to the answers, they do not show what the answers were. Rule 11 of this court (11 C. C. A. cii., 47 Fed. vi.) declares: "When the error alleged is to the admission or to the rejection of evidence, the assignment of errors shall quote the full substance of the evidence admitted or rejected." Under this rule we cannot notice any of these assignments. We will add, however, that upon a careful examination of the record we find that all of the objections are without merit.

It is assigned for error that the court refused, at the close of the evidence, to instruct the jury to return a verdict for the defendant. It would serve no useful purpose to set out the evidence in detail. It is sufficient to say that there was abundant evidence to send the case to the jury, and from which they might well find the facts as we have summarized them in the statement, and which we need not here repeat. One reading the testimony in the case cannot wink so hard as not to see that the A. Gauthier Decorating Company was a creation of the bank for its own purposes, that the business conducted in the name of this new creation was the bank's business, and that the bank was the recipient of the proceeds of the business, and was fully advised of all that was going on, including the purchase of the goods from the plaintiff. It does not matter that the goods were billed to this creation of the bank, and not to the bank itself. In a recent case we had occasion to say: "One corporation cannot keep another corporation under its management and control, and use it as

a scapegoat for its debts, whenever it finds it desirable or profitable to do so." Glidden & Joy Varnish Co. v. Interstate Nat. Bank, 32 U. S. App. 654, 16 C. C. A. 534, and 69 Fed. 912, 919. The law is not to be cheated by any gloss of words. It judges things by what they are in fact, and not by their names. Words are not things. If the relation of the bank to the A. Gauthier Decorating Company was not what we find it to be from the facts and circumstances disclosed in the evidence, it was an easy matter for the bank to show it. Some of the same persons were directors and officers in both corporations. The bank had the custody and control of its books and papers, and it was in its power to show precisely what its relation was to the A. Gauthier Decorating Company, and what disposition was made of the goods and the money received for them. But it declined to put a single witness on the stand, or offer a single book or paper in evidence. It is a well-settled rule of evidence that when a party has it in his power to rebut the inferences which the testimony tends to establish, and he declines to offer such evidence in rebuttal, the jury are at liberty to presume that the proof, if produced, instead of rebutting, would support, the inferences against him. Railroad Co. v. Ellis, 10 U. S. App. 640, 4 C. C. A. 454, and 54 Fed. 481. In Starkie, Ev. (10th Ed.) p. 75, it is said:

"The conduct of a party in omitting to produce that evidence, in an elucidation of the subject-matter in dispute, which is within his power, and which rests peculiarly within his knowledge, frequently affords occasion for presumption against him; since it raises a strong suspicion that such evidence, if adduced, would operate to his prejudice."

This rule is applied in capital and other criminal cases. Com. v. Webster, 5 Cush. 295, 316; People v. McWhorter, 4 Barb. 438.

It is commonly supposed that banks and bank cashiers represent the highest type of business honor and integrity, and generally this high opinion is fully justified; but the correspondence between the plaintiff and this bank through its cashier reveals on the part of the bank and its cashier that vulgar type of dishonesty of obtaining goods on credit, and then refusing to pay for them, and a court of justice is deliberately asked to put its seal of approbation on this method of doing business. It is said the court should do this for the protection of the bank's stockholders, but we know of no principle of law or morals that would justify the court in holding that a bank can obtain the property of the citizen by promising to pay for it, and, after obtaining it, convert it into money, and put the money in its vault, and then refuse to pay for the property upon the ground that such action would be prejudicial to its stockholders, or that it had no legal right to purchase the property. If it had no right to purchase the property, it should return it or its proceeds. The stockholders of the bank have no legal or moral right to profit by such illegal or dishonest acts of the bank at the expense of the innocent merchant whose property it has appropriated.

The bank seeks to escape paying for the goods upon two grounds. The first is that the cashier acted without authority of the bank. This, as we have seen, is an error of fact; but, assuming the cash-

ier, who had long held that position in the bank, and who still holds it, did act in the premises without sufficient authority from the bank, that circumstance constitutes no defense to this action upon the facts of this case. The cashier acted in good faith towards the bank. He did not appropriate to himself the goods purchased for the bank in the name of the A. Gauthier Decorating Company. They were sold, as was contemplated when they were purchased, along with the stock purchased by the bank at sheriff's sale, and the proceeds of the sale received and retained by the bank, after it had full knowledge of the circumstances under which the goods were purchased, if it did not have that knowledge before. The law on this state of facts is well settled, and is thus stated by Judge Thompson:

"It is a general principle in the law of agency that, where one person assumes, without authority, to make a contract for another, and that other receives the benefits accruing from the contract, and elects to retain them after being possessed of knowledge of the circumstances under which they have been procured from the other contracting party, he is thereby estopped from repudiating the contract without restoring the benefits and putting the other party in statu quo. This principle is applicable in its fullest sense to corporations, which, from their nature, can act only through the instrumentality of agents. If, therefore, an officer of a corporation, or other person, assuming to have power to bind the corporation by a given contract, enters into the contract for the corporation, and the corporation receives the fruits of the contract, and retains them after acquiring knowledge of the circumstances attending the making of the contract, it will thereby become estopped from afterwards rescinding or undoing the contract. In other words, by retaining the fruits of the unauthorized contract with knowledge of the circumstances which entitle it to its election either to affirm or disaffirm it, the corporation ratifies the contract, and makes it good by adoption. Speaking generally, and voicing the weight of judicial authority, the corporation is in like manner estopped by retaining, with knowledge, the fruits of the contract, from pleading ultra vires as a defense to an action thereon; that is, from setting up as a defense to an action to compel the performance of the contract on its part that it was without power to enter into it." Thomp. Corp. § 5258.

It is next said that the bank had no authority under its charter to buy and sell goods, and that any purchase of goods by the bank, or any one for it, was ultra vires, and did not bind the bank. We entertain no doubt of the bank's right to purchase the A. Gauthier stock at the sale thereof on the judgment in its favor; and the right to purchase to save a pre-existing debt due the bank carried with it by necessary implication the right to sell the goods so purchased. How the bank should proceed to dispose of the goods purchased at the attachment sale, and whether, in order to sell that stock to the best advantage, it could rightly buy fresh goods to mingle with it, we need not inquire; for, conceding that it had no right to purchase any goods, not even those purchased at the attachment sale, its liability to pay for the goods purchased from the plaintiff is not affected on the facts of this case. "The great mass of judicial authority," says Judge Thompson, "seems to be to the effect that, where a private corporation has entered into a contract in excess of its granted powers, and has received the fruits or benefits of the contract, and an action is brought against it to enforce the obligation on its part, it is estopped from setting up the defense that it had no power to make it." Thomp. Corp. § 6016. Continu-

ing the subject, the learned author further says it is a general principle of law that no party will be permitted to set up the defense of ultra vires while retaining the fruits or the benefit of the contract. This doctrine rests upon the unanswerable ground thus stated in Pennsylvania by Mr. Justice Porter: "A man who has enjoyed a privilege has no right to say that because he ought not to have enjoyed it he will not pay for it. However unlawful the act, it would be unsound policy to give him this immunity." Id. § 6015. The reason of the rule is that honesty and fair dealing are the highest public policy, and that a private corporation, which is a mere collection of individuals, is no more privileged to repudiate its engagements, and act dishonestly, than a single individual is. Id. § 6017. Where, therefore, a corporation purchases property contrary to a prohibition, or without an authorization in its charter, it cannot retain the property, and refuse to pay the price, or set up the defense of ultra vires when sued for the same. Id. § 6018. The authorities supporting the text of the learned author are too numerous to require citation. The doctrine has become familiar learning.

The charge of the court, each paragraph of which was duly excepted to, was, when applied to the law and the facts of the case, more favorable to the defendant than it had any right to ask, as will readily be seen by reference to the charge. The jury returned a verdict in favor of the plaintiff for "the sum of $3,201.94, with interest at 6 per cent." The amount of the verdict was the principal of the plaintiff's demand. The court below refused to render judgment on the verdict in any other form than that in which the verdict was returned, namely, "for the sum of $3.201.94, with interest at 6 per cent." To this ruling the plaintiff below duly excepted, and has brought error. Section 2252 of the Colorado Statutes (Mills') provides that creditors shall receive interest on money due on account from the date when the same became due. The account sued on was probably due some time before suit was brought, but the fact of recovery in the action settles conclusively that it was due when the suit was commenced, and from that date, namely, the 19th day of October, 1894, the plaintiff was plainly entitled, under the verdict of the jury, to have the interest calculated on the principal sum, namely, $3,201.94, at 6 per cent., and the circuit court will amend the judgment accordingly. Thus modified, the judgment of the circuit court is affirmed.