PENNSYLVANIA R. CO. v. ANOKA NAT. BANK.

(Circuit Court of Appeals, Eighth Circuit. April 12, 1901.)

No. 1,452.

CARRIERS—ACTION FOR LOSS OF GOODS—PRESUMPTION FROM FAILURE TO PRODUCE EVIDENCE.

Where plaintiff, in an action against a railroad company to recover for a loss of goods in shipment, introduces evidence which tends strongly to show inferentially that defendant managed and controlled the line of road upon which the loss occurred, although it was owned by a separate corporation, such as that the managing officers of the two companies were the same, that defendant held itself out to the public as operating the line by advertising it as a part of its system, etc., and defendant, although having it within its power, fails to produce evidence to show the actual relation between the two companies, it is a reasonable presumption that such evidence would support plaintiff's contention, and the jury is justified in determining the issue in favor of the plaintiff.

In Error to the Circuit Court of the United States for the District of Minnesota.

On the 22d day of August, 1898, S. H. Hall & Co. delivered to the Minneapolis, St. Paul & Sault Ste. Marie Railway Company 243 sacks of potato starch at Minneapolis, Minn., which by the terms of the bill of lading were to be carried to Frederick Road Station, Md., if on its road, and, if not, to be delivered to another carrier on the route to its destination. The bill of lading upon the day of its execution was duly indorsed to the plaintiff. The complaint alleges the goods were delivered by one connecting line to another until they reached Erie, when they were delivered to the defendant company to be carried to their final destination and were lost by it. The part of the charge of the court containing a somewhat detailed statement of the case and the facts the evidence tended to establish is here inserted:

"Gentlemen of the Jury: Although this case has taken considerable of your time, there is but one issue to be determined by you. The other matters in the complaint, as I understand it, are not contested, and no evidence has been introduced on the part of the defendant to question that introduced on the

part of the plaintiff in relation to those matters. It appears, in brief, that on or about the 24th or 25th day of August, 1898, Mr. Hall shipped to Frederick Road Station, Md., the amount of potato starch which is stated in the bills of lading introduced in evidence, and which you will have before you. This consignment was shipped by the Soo Road to go by the Anchor Line, as stated in the bills of lading, and over the Pennsylvania Road, which indicated a preference on the part of the shipper as to the carrier that should take the property beyond the Anchor Line, to be in care of the Pennsylvania Railroad, equivalent substantially to a statement of 'via the Pennsylvania Railroad,' to transport that consignment on the roads that belonged to it. There are provisions in the bill of lading that the carrier may send the goods by some other route, but the shipper indicates a preference for the Pennsylvania Railroad, and when the latter company took possession of the consignment it assumed the carriage, and this made a contract between it and the consignee to carry the goods as far as its route extended. Now, it seems to be admitted by the defense that from Erie on to Baltimore the route lay over roads which were controlled, managed, and operated by the Pennsylvania Railroad, including the Philadelphia & Erie Railroad from Erie to somewhere in the neighborhood of Harrisburg, there connecting with the Northern Central Railroad Company to Baltimore. It is admitted that both of these roads, while they are not perhaps either of them strictly the road of the Pennsylvania Railroad Company as a corporation, are operated and managed by that company, so that the Pennsylvania Railroad Company was the carrier of these goods in passing over those lines of railroad. So far there is no question, nor until the consignment reached Baltimore. * * * It appears that the goods were delivered without surrender of the bill of lading; and the only question is, was this final carrier that failed to perform its duty and to fulfill the contract of carriage, by delivering the goods without surrender of the bill of lading, the Pennsylvania Railroad, the defendant in this action? That is really the only question in the case. * * * That is a question of fact about which I can help you very little. It is a matter for the jury to determine entirely upon the evidence in the case, and you have heard all the testimony as to the relations of these roads. It is admitted that the Pennsylvania Railroad Company is a corporation by itself; and it is also admitted that the Philadelphia, Wilmington & Baltimore Railroad Company is another corporation, and that as such corporation it is the owner of the line of railway which has been described by the different witnesses who have testified either orally or by deposition before you,—the railroad between Philadelphia and Baltimore,—and that it also operates the railroad of the Baltimore & Potomac, which is a continuation of the same line to the city of Washington.

"The claim on the part of the plaintiff is, in this case, that, notwithstanding these are separate corporations, the Pennsylvania Railroad Company dominates and controls the whole system, and is really the carrier and manager of the traffic upon the Philadelphia, Wilmington & Baltimore Railroad, and the extension the Baltimore & Potomac Railroad, the same as it is of the other lines—the Northern Central, the Philadelphia & Erie, and other lines—connected with it. Now, the mere fact that the same persons may be stockholders in both corporations, or the fact that the Pennsylvania Railroad Company is a large stockholder in the Philadelphia, Wilmington & Baltimore Railroad Company, does not necessarily lead to the conclusion that it operates and manages the railroad of that company. It is a matter to be considered by the jury with the other evidence in the case. Perhaps, of itself, it had very little tendency in that direction. Another matter testified to by the witnesses goes further, and shows that the executive officers of these roads are the same; that is, the superintendent, the general manager, the treasurer, controller, and auditor. I do not know that there was any controller. Perhaps I am mistaken about that. But the jury will remember the different executive officers of these roads who have been testified about, more particularly by the depositions of parties who themselves are officers of this defendant railroad company. It appears that the same persons hold like offices in not only these two railroad companies, but also in the Northern Central and, I think, the Philadelphia & Erie. The jury, however, will remember in relation to that, and, if my memory happens to be at fault, it is a matter which the

jury should themselves determine from their own recollection of the testi-mony. The fact that certain executive officers of the Pennsylvania Railroad Company are also executive officers of these other railroad companies is a matter which the jury are entitled to consider, as to whether it shows, with the other testimony in the case, that the Pennsylvania Railroad Company really dominates and operates all of these lines of road. It is a matter that is proper to be taken into consideration in that regard. Now, the mere fact that the expenses and the receipts from these different roads are kept separate may have very little tendency one way or the other; for that is a thing that is very often done in different parts and divisions of a single railroad, which belongs without any question to the same corporation. It would be certainly very likely to be done, and it would be hardly good business if it should fail to be done, with reference to separate railroads which are controlled and run by the same corporation; for the reason it would be necessary and proper to ascertain the earnings and the expenses of any division or part of a company of that kind. The board of managers could not have any intelligence at all of the value or the prosperity, or the reverse, of their property, unless they kept accounts of this kind. So, as I said before, that fact would have very little to do with it. The fact that all these accounts are kept by the same set of officers, and that the returns of them are all made to the same officers on these different divisions, and the fact that these general officers, although they hold the same positions in the different companies, are not paid separate salaries by the different companies (if that is the effect of the evidence), but their single salaries are paid by the Pennsylvania Railroad Company, and then apportioned among the different corporations pro rata, seems to me is a mat-ter for the jury to consider, although, if they were all run and owned by the same company, in order to ascertain the real, actual expenses and profits, these accounts would have to be kept, and a share of all the expenses, including the salaries of these officials, would have to be apportioned between the different roads, or different divisions, as the case might be, of the same system, if they were the same system.

"As I stated before, it appears that the officers of the Philadelphia, Wilming-ton & Baltimore Railroad Company and of the Pennsylvania Railroad Com-pany are the same; that is, that most of the executive officers who have charge of the operation of the railroads, freight and passenger, the general manager, auditor, and treasurer of these roads, are the same officers, and the accounts are kept, to some extent at least, by the Pennsylvania Railroad Com-pany, and the proper apportionments made to the other companies. It is for the jury to determine whether under this evidence they are satisfied that the Pennsylvania Railroad Company is really the company that operates the Philadelphia, Wilmington & Baltimore Railroad Company, under whatever arrangement they may have between them; that is, that it dominates and con-trols the operation of the latter road. If it does, then the carriage of passen-gers and freight, and the delivery of freight, would be the business of the Pennsylvania Railroad Company, and it would be (ultimately) responsible for any wrongs committed in the conduct of that business. If, however, the Philadelphia, Wilmington & Baltimore Railroad Company does this business itself, and the Pennsylvania Railroad Company has no part in the transaction of that business, then the Philadelphia, Wilmington & Baltimore Railroad Company would be the company responsible to the plaintiff, and the Pennsyl-vania Railroad Company would not be responsible, the same precisely as the plaintiff could not hold the Anchor Line or the Soo Road as responsible for the lack of care in that delivery at Frederick Road Station, because they have fulfilled their part of the contract, and have carried and delivered the goods to the next carrier; and if the Pennsylvania Railroad Company did the same thing, and carried the goods as far as it could over its lines, and delivered them to another carrier over whom it had no control, the Philadelphia, Wil-mington & Baltimore Railroad Company, then the Pennsylvania Railroad Company could not be held responsible, and the plaintiff's cause of action would be against the Philadelphia, Wilmington & Baltimore Railroad Com-pany. As I have already stated, this is the question for you to determine upon the evidence, and the only question there is in the case. It is not necessary that I should go over the evidence in detail, and refer to the testi-

mony of the different railroad officials who have testified here mainly by depositions, or refer to the advertisements or time tables or schedules, or refer to the waybills, which would seem to be made in Baltimore, upon which these goods were sent from Baltimore to Frederick Road Station, or to any of these matters. The jury have seen these exhibits, and the whole case has been argued very carefully by counsel. It seems to me I would not be warranted in occupying the time of the jury with them, nor in detailing what the testimony is in the case. If upon the whole evidence you are satisfied that this portion of the road is really a part of the route which was under the control and management of the Pennsylvania Railroad Company, either singly or in connection with the Philadelphia, Wilmington & Baltimore Road, if the two roads were jointly interested in the carriage of the goods over that road, then, in either of those cases, the defendant would be liable to the plaintiff for the amount of the claim, $2,695, with interest from the 15th of September, 1883, at 7 per cent. If the evidence fails to satisfy you of that, fails to satisfy you that the Pennsylvania Railroad Company was in control and management of that part of the road from Baltimore to Frederick Road Station, and that that station was solely and alone under the charge of the Philadelphia, Wilmington & Baltimore Railroad Company, then your verdict should be for the defendant."

Due exception was taken to various paragraphs of the charge of the court and to the refusal of the court to give a peremptory instruction to the jury to return a verdict for the defendant. There was a verdict and judgment for the plaintiff, whereupon the defendant sued out this writ of error.

Albert E. Clarke (Arthur M. Keith, Robert G. Evans, Charles T. Thompson, and Edwin K. Fairchild, on the brief), for plaintiff in error.

Edward Savage (C. E. Purdy, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The goods were lost on the line of the last carrier, and the only material contested question of fact in the case was whether the defendant was the last carrier, or was liable as such. The plaintiff maintained that it was. The defendant maintained that it was not, but that the Philadelphia, Wilmington & Baltimore Railroad Company was the last carrier, and carried the goods from Baltimore to Frederick Road, where they were lost. Upon this disputed question of fact there was a large volume of testimony introduced by the plaintiff, some of which is adverted to in the charge of the lower court. It would serve no useful purpose to set out this testimony. It is sufficient to say that it tended strongly to show that the stock of the Philadelphia, Wilmington & Baltimore Railroad Company was owned in whole or in part, at least, by the defendant company, and that it was in fact operated and controlled by the defendant. In folders, in advertisements, and in various other ways the defendant represented to the public that the Philadelphia, Wilmington & Baltimore Railroad was a part of its "system," and in some instances a "division." One item of the mass of testimony in the case is the waybill made out by the defendant for the shipment of the goods from Baltimore to Frederick Road, which shows their shipment between these points over the defendant's road. The officers of the two companies were mainly the same persons. While

the Philadelphia, Wilmington & Baltimore Railroad Company is a separate legal entity, according to the testimony, it sustained towards the defendant company the relation of a dummy more nearly than that of an independent, self-governing railroad company. Upon the testimony the jury might well find that the corporate existence of the Philadelphia, Wilmington & Baltimore Railroad Company was maintained by and for the use of the defendant company, and that the defendant company held it out to the world as a part of its system, for whose acts it was responsible. We think the jury might rightly infer from the evidence that, if a recovery could be had against the Philadelphia, Wilmington & Baltimore Railroad Company on the plaintiff's claim, the result to the defendant in a financial sense would be precisely the same as if the recovery had been against it. It seems highly probable from the testimony that the losses and gains of the Philadelphia, Wilmington & Baltimore Company are in the end the losses and gains of the defendant company. As before stated, the officers of the two roads are very largely the same persons, and the dominion of the Pennsylvania Railroad Company, the plaintiff in error, over the Philadelphia, Wilmington & Baltimore Company, seems to have been complete and unquestioned. At least, there was evidence from which a jury might rightfully infer such was the case. The defendant company, of course, knew exactly the relation it sustained to the Philadelphia, Wilmington & Baltimore Company, and, if it was not such as the mass of testimony introduced by the plaintiff strongly tended to show it to be, it was open to it to produce convincing evidence of the fact, and show precisely what the relation was; and, not having done so, every inference warranted by the evidence may justly be indulged against it. Where the evidence tends to fix a liability on a party who has it in his power to offer evidence of all the facts as they existed, and rebut the inferences which the proof tends to establish, and he refuses to offer such proof, the natural inference is that the proof, if produced, instead of rebutting, would support, the inference against him. Railway Co. v. Elliott, 102 Fed. 96, 42 C. C. A. 188; Railroad Co. v. Ellis, 54 Fed. 481, 4 C. C. A. 454; Blatch v. Archer, Cowp. 63, 65; 1 Starkie, Ev. 54; Com. v. Webster, 5 Cush. 295, 316, 52 Am. Dec. 711; People v. McWhorter, 4 Barb. 438; Wylde v. Railroad Co., 53 N. Y. 156, 164; Kirby v. Talmadge, 160 U. S. 379, 16 Sup. Ct. 349, 40 L. Ed. 463; Pacific Coast S. S. Co. v. Bancroft Whitney Co., 36 C. C. A. 135, 94 Fed. 180, 198; McDonough v. O'Niel, 113 Mass. 92.

The court rightfully refused to give a peremptory instruction to the jury to return a verdict for the defendant, and its charge in chief was a correct statement of the law applicable to the testimony in the case. The law deals with things, not names; with the substance, not with the shadow; with realities, and not forms. Conceding that the Philadelphia, Wilmington & Baltimore Railroad Company is a legal entity and maintains a complete corporate organization, it by no means follows that that company alone is liable for the loss of the goods. Whether that company and the defendant company were partners, and as such jointly and severally liable for the loss of the goods, or whether that company's road is a part of the defend-

ant's "system," or one of its "divisions," and dominated and operated by the defendant for its own exclusive benefit, or for the joint benefit of both roads, were questions of fact fairly open for the consideration of the jury upon the evidence. In Railroad Co. v. Howard, 178 U. S. 153, 20 Sup. Ct. 880, 44 L. Ed. 1015, the contention of the defendant railway company was that it was not liable for an injury received by a passenger because, prior to the accident, the defendant's road had been leased to a Kentucky corporation, which was operating the road at the time of the accident; but the supreme court held that that fact would not bar a recovery, if, notwithstanding the existence of the lease, the defendant company, through its agents, directed and controlled the train to which the accident happened. The court said:

"The lease might exist, and the Virginia company might still manage the Kentucky company, or some particular through train over that road."

And it was further said that whether it did so or not was a question of fact for the jury, whose verdict ought not to be disturbed upon the evidence, which is set out in the opinion and is much less cogent in support of the verdict in that case than is the evidence in support of the verdict in the case at bar.

An exception was taken to the ruling of the court excluding certain evidence offered by the plaintiff in error; but, as the exception is not argued in the brief of counsel for the plaintiff in error, we infer it is not regarded as tenable, in which view we concur. Finding no error in the record, the judgment of the circuit court is affirmed.