(108 N. W. 485.)

————

THE FIRST NATIONAL BANK OF PORTAGE, WISCONSIN, v. THE STATE BANK OF NORTHWOOD, A CORPORATION, SAMUEL LOE, AS RECEIVER OF THE STATE BANK OF NORTHWOOD, APPELLANTS. THE BEIDLER & ROBINSON LUMBER COMPANY, A CORPORATION, NICK HALVORSON, M. V. LINWELL, SYDNEY C. LOUGH AND KATE LOUGH, DEFENDANTS.

Opinion filed February 14, 1906.

**Banks and Banking — Excessive Loans.**

1. Where, in evidence of a loan actually made to a bank, the lending bank accepts from the borrowing bank a note signed by the latter's cashier, personally, and indorsed by the borrowing bank, this being done to avoid disclosing on the face of the transaction an excessive loan to the borrowing bank, the borrowing bank is not thereby relieved of its obligation as a debtor.

**Same — Loan by Officer — Ratification.**

2. Where an officer of a bank, without authority to do so, borrowed money in the name of his bank and pledged certain of the bank's assets as security for the loan, and the borrowed money was received and used by the bank, and the transaction was such that the directors had, or ought to have had, knowledge of it, the corporation is estopped to deny the authority of its officer to make the contract in its behalf by which the money was procured.

**Mortgage — What Constitutes — Conveyances in Trust — Vendor and Purchaser.**

3. The defendant bank had sold certain of its lands under executory contracts, which provided that the title should be conveyed to the vendees on payment of the purchase price, which was to be paid by installments, the vendees, meantime, being given possession. Each future installment of the purchase price was represented by the vendees' note. The defendant bank assigned these contracts with accompanying notes to the plaintiff as collateral security for the former's debt to the latter. In connection with this assignment, and as part of the same transaction, the defendant bank conveyed the legal title of the lands described in said contracts to the plaintiff. *Held,* that the conveyances of the land cannot, so long as the

vendees' contracts are in force, be considered as mortgages securing the debt of the defendant bank and be foreclosed as such, but that the conveyances transferred to the plaintiff the legal title of the lands to be held by it in trust as security for the purchase price of the lands by the vendees, such title to be conveyed to the purchasers when the latter had performed the conditions of the contracts.

**Banks and Banking — Certificate of Deposit.**

4. Although a certificate of deposit payable on demand after a stated period contains a stipulation that it shall not bear interest after maturity, the holder thereof is entitled to legal interest thereon from the date when the bank fails or refuses to meet a demand for payment when payment is due.

Appeal from District Court, Grand Forks county; *Fisk, J.*

Action by the First National Bank of Portage against the State Bank of Northwood and another. Judgment for plaintiff and defendants appeal.

Remanded with instructions to modify the judgment.

*Charles F. Templeton,* for appellants.

President or cashier of a state bank cannot bind it for a loan unless authorized thereto by its directors. First National Bank of Corunna v. Michigan City Bank, 8 N. D. 608, 80 N. W. 776; Florida Cent. R. R. Co. v. Schutte, 103 U. S. 118, 26 L. Ed. 327; Brown v. Chicago & N. W. Ry. Co., 78 N. W. 771; Eau Claire National Bank v. Benson, 82 N. W. 604.

Such president or cashier of a state bank cannot pledge its paper without like authority. Hoyt v. Thompson, 5 N. Y. 320; State v. Davis, 50 How. Pr. 447; First National Bank v. Ocean Nat. Bank, 60 N. Y. 278; Schneitman v. Noble, 39 N. W. 224; Kohler v. Hubby, 2 Black. 715, 17 L. Ed. 339; Asher v. Sutton, 1 Pac. 535; Greenawalt v. Wilson, 34 Pac. 403.

Nor to execute the deeds sought to be foreclosed. Thompson on Corporations, section 4761; Zane on Banking, sections 98, 100; Legett v. New Jersey Banking Co., 23 Am. Dec. 728; Winsor v. Lafayette Co. Bank, 18 Mo. App. 655.

Such authority can only be conferred by a formal act of the board of directors. Baldwin v. Canfield, 26 Minn. 43, 1 N. W. 261; First Nat. Bank v. Drake, 11 Pac. 445; Gashweiler v. Willis, 33 Cal. 9; De La Vergne Refrigerating Machine Co. v. German Savings Institution, 175 U. S. 40, 44 L. Ed. 65; Alta Silver Mining

Co. v. Alter Placer Min. Co., 78 Cal. 629; Hay Press Co. v. Devol, 72 Fed. 717; Edwards v. Water Co., 34 Pac. 381; Peoples Bank of New York v. St. Anthony Roman Catholic Church, 109 N. Y. 512, 17 N. E. 408.

Where a loan is to its cashier the bank's indorsement creates no liability on its part. Park Hotel Co. v. Fourth National Bank, 86 Fed. 742; Commercial National Bank v. Pirie, 82 Fed. 799.

A contract in violation of statute is void. Miller v. Ammon, 145 U. S. 421, 36 L. Ed. 759.

The loaner cannot hold bank's paper as security for its cashier's debt. Security Bank of Minn. v. Kingsland, 5 N. D. 263, 65 N. W. 697; McLellan v. Detroit File Works, 23 N. W. 321; Rhodes v. Webb, 24 Minn. 292; Dobson v. Moore, 45 N. E. 243; Lee v. Smith, 84 Mo. 304; Farmers Loan & Trust Co. v. Fidelity Trust Co., 86 Fed. 541.

*Guy C. H. Corliss,* for respondent. •

A bank may borrow money. Auten v. U. S. Nat. Bank, 174 U. S. 125; Aldrich v. Chemical Nat. Bank, 175 U. S. 618; Barnes v. Ontario Bank, 19 N. Y. 152; Merchants Bank v. State Bank, 10 Wall. 604, 19 L. Ed. 1008; Donnell v. Bank, 80 Mo. 165; Sturgis v. Bank, 11 O. St. 153; Rockwell v. Bank, 13 Wis. 653; Ballston Spa Bank v. Marine Bank, 16 Wis. 120; Hanover Natl. Bank v. Natl. Bank, 109 Fed. 421; First Natl. Bank v. Arnold, 60 N. E. 134; Sloane v. Kansas City Bank, 7 S. W. 1056; Armstrong v. Chemical Nat. Bank, 83 Fed. 556; First Nat. Bank v. Michigan City Bank, 8 N. D. 608, 80 N. W. 1135.

A bank cannot deny its power to secure its loans, the proceeds of which it has received, so long as it retains such proceeds. Wright v. Hughes, 21 N. E. 909; Tourtelot v. Whithed, 9 N. D. 407, 84 N. W. 8.

A bank cashier has all the powers of a board of directors and could do whatever they could do, or authorize to be done; and had the full power of a banking corporation with respect to the conduct of business. Armstrong v. Chemical Nat. Bank, 83 Fed. 556; Tourtelot v. Whithed, supra; Davenport v. Stone, 62 N. W. 722; Wing v. Bank, 61 N. W. 1009; Bank v. Perkins, 4 Bosw. 420.

It is the duty of the directors to know of the transactions of its cashier, and they are chargeable with knowledge thereof. Martin v. Webb, 110 U. S. 7, 28 L. Ed. 49; Hahoney Mining Co. v. Anglo-

Cal. Bank, 104 U. S. 192, 26 L. Ed. 707; Sun Printing and Pub. Ass'n v. Moore, 183 U. S. 642; Ditty v. Dominion Nat. Bank, 75 Fed. 769; Aldrich v. Chemical Nat. Bank, 176 U. S. 618; New Hope and Delaware Bridge Co. v. Phoenix Board, 3 Comst. 156, 4 Thomp. Corp., section 5224; Sun Printing and Pub. Ass'n. v. Moore, supra.

The usages of business, in the particular institution, or the locality, may be considered in determining a cashier's power.   Auten v. U. S. Bank, 174 U. S. 125.

Engerud, J.  This action is before us for trial anew of all the issues.  Defendants, the State Bank of Northwood and Samuel Loe, receiver of said bank, are the appellants.  The State Bank of Northwood, which we shall hereafter refer to as the "Northwood Bank," is a banking corporation organized under the laws of this state.  It became insolvent, and Mr. Loe is the receiver placed in charge of its affairs.  The bank's doors were closed, and the receiver placed in charge thereof, in July, 1901.  The plaintiff, which we shall refer to as the "Portage Bank," is a national bank at Portage, Wis.  It alleges that on the 26th day of January, 1901, the Northwood bank was indebted to it in the sum of $7,500 for borrowed money, in evidence of which indebtedness the Northwood bank had, on December 1, 1900, executed and delivered to the Portage bank a certificate of deposit for said sum, dated December 1, 1900; that on January 26, 1901, for the purpose of securing the payment of said debt, the Northwood bank executed and delivered to the Portage bank certain quitclaim deeds, purporting to convey to the latter bank the former bank's title to several tracts of real property owned by the bank, it being agreed that the deeds, though purporting to be unconditional conveyances, were given only as security for said debt and were mere mortgages.  The title to some of these tracts appeared of record in the name of Sydney C. Lough, who, at the time of the conveyances, was president of the bank and held the title in trust for the corporation.  The deeds of these tracts were therefore executed by said Lough personally as grantor, but in doing so he was acting for and in behalf of the bank.  No point is made as to the sufficiency of these conveyances in form to convey the bank's title, and in speaking of them hereafter we shall treat them as conveyances by the corporation itself.  The prayer for relief, in substance, is that these deeds be declared to be mortgages and for

a decree of foreclosure in the usual form. The answer of the Northwood bank and its receiver denies that it ever became indebted to the Portage bank by reason of the transactions set forth in the complaint. These defendants aver that the acts referred to in the complaint, although done in the name of the bank by the president and cashier, were not done in the ordinary course of business of banking in this state, and were wholly unauthorized by the directors of the Northwood bank. The answer further alleges as a counterclaim that, at the time of the execution of the certificate of deposit described in the complaint and as part of that transaction, Sydney C. Lough, the then president of the Northwood bank, unlawfully and without authority from the board of directors of said corporation, delivered to the plaintiff a large number of promissory notes executed by various persons to the bank and owned by it. The notes so delivered are specifically described and are alleged to be worth the aggregate sum of $11,000. It is alleged that the receiver of the Northwood bank demanded the surrender of said notes to him by the Portage bank, but the latter refused and still refuses to comply with the demand, and thereby converted said notes to its own use to the damage of said Northwood bank in the sum of $11,000. Said defendants demand judgment that the plaintiff take nothing by the action, that the deeds described in the complaint be declared void, and that the defendants have and recover from plaintiff damages in the sum of $11,000. Such in brief are the issues which we deem material to the decision of the case. The plaintff claims to have a mortgage on the several tracts of land involved to secure its claim against the Northwood bank and demands a foreclosure thereof. The defendants deny the indebtedness; assert that the transactions referred to in the complaint were void as against the Northwood bank, and that the Portage bank has unlawfully converted to its own use part of the Northwood bank's assets to the damage of the latter in the sum of $11,000, for which amount they demand judgment against plaintiff.

We shall take up the counterclaim first because the decision of the questions presented thereby necessarily discloses and determines the nature and validity of all the transactions upon which plaintiff relies for relief. The record is a very voluminous one. As to what was said and done, however, by the various persons concerned in the numerous transcations involved, there is little or no room for dispute in the evidence. The dispute is principally

as to the inferences to be drawn from the facts and circumstances, and as to the legal effect of the acts of the parties. It would require too much space, and would serve no useful purpose, to set forth in this opinion a detailed analysis of the evidence in support of our views as to the ultimate facts proved. We shall simply state the facts which we think the evidence establishes. For several years before the failure of the Northwood bank its business had been conducted by Sydney C. Lough, who, from the time of its organization until November, 1900, had been cashier. At that time Lough was made president, and one H. Rostad succeeded him as cashier; but Lough continued his management of the bank as before. The directors paid little or on attention to their duties. They met from time to time as a board, but the only business apparently transacted at such meetings was of a formal nature, to vote or resolve as Lough dictated. Lough was virtually the sole manager of the bank. The bank had been in bad condition for some years before the failure and had continued to tide over its difficulties and conceal its true conditions by borrowing from other banks. When one bank declined to extend further credit, its claim would be met by borrowing from some other bank. On January 9, 1900, Lough, in behalf of the Northwood bank, borrowed from the Portage bank $5,000. In order to obtain this loan and as collateral security therefor, Lough was required to pledge to the Portage bank sundry promissory notes owned by the Northwood bank. The terms upon which these collateral securities were deposited were stated in the note executed in the name of the Northwood bank by Lough, as cashier, to evidence the debt. That note is in the following form: "$5,000. Northwood, N. Dak., Jan. 9th, 1900. November 1st, 1900, after date, (without grace), for value received, we promise to pay to the order of the First National bank of Portage, five thousand and no-100 dollars, at its office in the city of Portage and state of Wisconsin, with interest at the rate of 8 per cent per annum after date until paid, having deposited with said bank as collateral security sundry notes and first mortgage farm loans, all assigned and deposited with C. C. Gowran & Co., of Grand Forks, N. Dak., amounting to $6,250.00. All or any part of which hereby give the said bank or its president or cashier, or its assign or assigns, authority to sell on maturity of this note, or any time thereafter, (or before, in the event of such securities depreciating in value), at public or private sale, with-

out advertising the same or demanding payment, or giving notice of such sale, and it may become the purchaser on said sale, and to apply the net proceeds to the payment of this note, including interest and in case of deficiency promise to pay the amount thereof, forthwith after such sale. And it is hereby agreed and understood that if recourse is had to the collaterals, any excess of collaterals upon this note shall be applicable to any other note or claim held by said bank or its assigns against ————; and in case of exchange of, or addition to the collaterals above named, the provisions of this note shall extend to such new or additional collaterals. P. O. Northwood, N. D. The State Bank of Northwood, Sydney C. Lough, Cashier."

A stipulation was at the same time made to the effect that the Northwood bank should have the privilege of withdrawing from time to time any of the collaterals so deposited by substituting other acceptable collaterals in their place. On August 25, 1900, another loan of $3,000 was made by the Portage bank to the Northwood bank on the same terms and conditions as to collateral security. With respect to this loan, the appellants earnestly contend that the loan was not in fact one to the Northwood bank, but was a loan to Lough personally. The facts in regard to the transaction are as follows: Lough applied for the loan in behalf of his bank, and his application was accepted. The capital of the Portage bank, however, was only $75,000, and the officers of that bank wished to evade the statutory prohibition against ·loans to one borrower of more than 10 per cent of its capital. In order to do so, it was arranged that Lough should sign the note personally as maker and attach the name of the bank as indorser. This was done and the $3,000 so obtained was sent by Lough to a bank in Minneapolis with which the Northwood bank kept an open account. The money was credited by that bank to the Northwood bank as directed by Lough, and it was subsequently used in honoring the drafts of the Northwood bank issued in the regular course of business, so that the defendant bank received the benefit of the loan. There is not the slightest doubt that the parties to the transaction intended it to be, and thought it was, a loan to the Northwood bank, and not to Lough. It is true that Lough, apparently to temporarily cover up the bad state of his own personal account in the Northwood bank, entered it on the books of that bank as a credit to himself, but on October 19, 1900, this trick in book-

keeping was rectified by a cross-entry showing the transaction as it actually occurred. We do not consider it material that the Northwood Bank was in form merely an indorser or guarantor of Lough's note, instead of appearing as the real primary debtor. It employed this device to get the money and has reaped the fruits of the transaction. It assumed the obligation to pay the debt, and it is not material to this controversy in what form its obligation was assumed. The fact that the loan was $500 in excess of that limited by law does not relieve the debtor of its obligation whether we consider the bank as the real maker or as a mere indorser or guarantor. Hanover Nat. Bank v. Bank, 109 Fed. 21, 48 C. C. A. 482; Bank v. Arnold (Ind. Sup.) 60 N. E. 134. In the fall of 1900 the Northwood bank paid the interest on both these notes to maturity and paid. $500 on the principal, leaving a balance of $7,500 due to the Portage bank on December 1, 1900. In the meantime, some of the collaterals pledged to the Portage bank had been withdrawn and other substituted in accordance with the terms of the agreement hereinbefore referred to. About the 24th of November, 1900, an arrangement was effected for the renewal of this $7,500 debt to the Portage bank. The two notes were to be surrendered and the Portage bank agreed to accept in lieu thereof a certificate of deposit for $7,500 dated December 1, 1900, payable one year from its date and bearing interest at the rate of 8 per centum per annum from its date to its maturity, but no interest after maturity. The same arrangement as to collateral securities was to continue, new collaterals, however, to be substituted for those already pledged. The certificate of deposit described in the complaint was accordingly executed and delivered, and subsequently, on or about January 21, 1901, the required collateral securities were delivered in exchange for those formerly pledged. The collateral securities so delivered are those described in the counterclaim. In connection with the same transaction, the deeds described in the complaint were executed and delivered. The lands conveyed by these deeds were owned by the Northwood bank. As to each tract it had entered into contracts with a purchaser to sell the same to him on the installment plan, the purchaser in each instance being given possession. Each purchaser had made a cash payment of part of the purchase price and had executed notes to the vendor for the amount of each future payment required by the contract. The notes and contract in

each instance referred to each other and together constituted vir-
tually a single contract. Each contract bound the vendor to convey
the title to the vendee on payment of the price agreed. These
notes were amongst the collaterals delivered in January, 1901, to the
Portage bank. The contracts in connection with which the notes
were made were also formally assigned to the Portage bank. At
the request of the Portage bank the deeds were also executed.

It is very clear from the evidence that the deeds were executed
in order to completely clothe the Portage bank with the rights and
remedies of the vendor, in these several contracts. All these execu-
tory contracts are still outstanding in full force and effect. The
vendees were given possession of the lands affected and in equity
are regarded as the owners of the land, the legal title being held
by the Portage bank in trust as security for the payment of the
purchase price; and the vendees are entitled to a conveyance of
that legal title upon payment of the purchase price of the land.
In other words the relative positions of these several vendees and
the Portage bank is, in equity, that of mortgagor and mortgagee.
Such, also, was the position of these vendees and the Northwood
bank before the transfer of the contracts as collateral security. The
Northwood bank assigned the vendees' contract obligations to
the Portage bank and also conveyed to the latter the legal title
which was held as security for those obligations. In equity the
transaction was precisely the same and gave rise to the same
rights and obligations, as between the parties affected thereby, as
would have existed if the Northwood bank had assigned to the
Portage bank the vendees' notes secured by real estate mortgages.
On payment of the purchase price, the Portage bank was em-
powered to convey the legal title to the vendee, just as it would be
authorized to satisfy the mortgage if the vendee's obligations had
been so secured. Now, the Northwood Bank, through its legal
representative, the receiver, alleges that the Portage bank, by
refusing to surrender the notes on demand, is guilty of converting
them and seeks to recover the full value of the security. It is self-
evident that, if the Northwood bank recover the full value of the
contract notes from the Portage bank, then the latter becomes
the owner of those contract obligations, and, if the ownership of
the obligations passes to the Portage bank, it is also entitled to
deeds to be mortgages directly hypothecating the respective tracts
as security for the $7,500 certificate of deposit, and decrees fore-

closure, the judgment is erroneous. The plaintiff was properly awarded judgment for the recovery of its claim against the Portage bank. The amount, however, was erroneously computed at too large a sum, but the error in this respect was rectified by an offer to remit the excess. The plaintiff concedes that interest should be computed from the date of the certificate to the failure of the bank (July 23, 1901) at 8 per cent, and thereafter at 7 per cent. The certificate in terms bears interest from its date to maturity at 8 per cent and no interest after maturity. The bank, in legal effect, as well as in fact, refused payment of the obligation. In such a case it is obvious that the stipulation providing that no interest should be allowed after maturity does not take effect. That stipulation merely protected the bank from any liability for interest after the maturity of the certificate if the holder failed to present it for payment at that time. The bank having defaulted its obligation, the law allows legal interest from the date of the default as compensation to the party injured by the breach of the contract.

The parties have filed a stipulation in the cause that, if the final judgment herein is for plaintiff, it shall contain a provision to the effect that such judgment shall be without prejudice to the right of the parties in this action to have an accounting with respect to the collateral delivered to plaintiff as security for the certificate of deposit. A provision to that effect will accordingly be inserted in the judgment. The cause will be remanded, with directions to modify the judgment appealed from to conform to this opinion. The respondent will recover taxable costs. All concur.

## ON REHEARING.

The appellant urges in a petition for rehearing that the costs should be taxed against respondent and not against appellant. It is true that the plaintiff and respondent has been denied the affirmative equitable relief which it sought. But it is also true that the defendant and appellant has been defeated on every point which it urged either against the plaintiff's right or as ground for affirmative relief.

The pivotal question in controversy in this law suit was as to the validity of the transaction involved. The defendant's denial of its validity is the cause of this law suit, and it was in the

trial of that question that practically all the expenses of this litigation were incurred. In view of that fact it is no more than just that the defeated party should pay the taxable costs. Although the plaintiff misconceived its remedy, the defendant did not question the propriety of the remedy; and with respect to the question of substantial right actually litigated, the defendant and respondent is the defeated party.

In such a case as this the awarding of costs is left to the discretion of the court. Rev. Codes 1899, sections 5580, 5581; Rev. Codes 1905, sections 7179, 7180. If any item of costs provided for by Rev. Codes 1905, section 7176, is included in the costs as taxed in the court below, such item should be stricken out.

The petition for rehearing is denied.