## MERCHANTS' NAT. BANK OF MANDAN et al. v. FIRST NAT. BANK OF DULUTH.

(Circuit Court of Appeals, Eighth Circuit. December 12, 1916.)

No. 4639.

1. BANKS AND BANKING ⊜178—DISCOUNT—NATURE OF TRANSACTION—"LOAN."

A transaction, whereby a bank indorsed to another without recourse a number of notes under an agreement that the indorsee would credit the indorser with the amount of the notes and interest less the agreed discount, and that whenever any of the notes fell due the account was to be charged with the amount and the note sent to the indorser for collection, was a "loan" with collateral security, not a sale of the notes.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 656–666; Dec. Dig. ⊜178.

For other definitions. see Words and Phrases, First and Second Series, Loan.]

2. BANKS AND BANKING ⊜96—PLEDGE—STATUTE—"DISPOSING."

Rev. Codes, N. D. § 4639, subd. 8, prohibiting a bank association, in selling or disposing of loans made on real estate security, from guaranteeing the payment or collection thereof, and providing that a contract guaranteeing such payment shall not be binding on the bank; does not apply to a pledge of a note secured by real estate mortgage to secure a loan to the bank, since "disposing," as used in the statute, means to part with, to alienate.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 230; Dec. Dig. ⊜96.

For other definitions, see Words and Phrases, First and Second Series, Dispose Of.]

3. BANKS AND BANKING ⊜113—AUTHORITY OF CASHIER—ESTOPPEL.

Where a bank had without question received and applied to its own use money loaned by another bank on security of notes indorsed by its

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cashier, it cannot question the cashier's authority to agree that the amounts of those notes when due should be charged against it.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 273–276; Dec. Dig. ☞113.]

4. BANKS AND BANKING ☞237—TRANSFER OF ASSETS—LIABILITY FOR DEBTS.
   Where the stockholders of a state bank organized a national bank which took over the assets of the state bank for a consideration of one dollar and its agreement to pay the deposits, time certificates, cashier's checks, and certain bills payable of the state bank, and the state bank returned to its principal stockholders the amount of the assessment levied against all the shares a few years before which had all been paid by the principal stockholder, and the sum so returned was used by him to repay the loan of the money necessary to organize the national bank and to purchase additional stock in the national bank, the transfer of the assets rendered the national bank liable for the amount of a loan made to the state bank secured by a note pledged as collateral.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 894–897; Dec. Dig. ☞237.]

Appeal from the District Court of the United States for the District of North Dakota; Charles F. Amidon, Judge.

Suit by the First National Bank of Duluth against the Merchants' National Bank of Mandan and others. Decree for plaintiff, and defendants appeal. Affirmed.

W. H. Stutsman, of Mandan, N. D. (Edward Engerud, Daniel B. Holt, and John S. Frame, all of Fargo, N. D., on the brief), for appellants.

W. D. Bailey, of Duluth, Minn. (Jed L. Washburn, Oscar Mitchell, A. C. Gillette, and J. A. Sinclair, all of Duluth, Minn., on the brief), for appellee.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

CARLAND, Circuit Judge. The appellee, the First National Bank of Duluth, Minn., brought this action against appellants, the Farmers' & Merchants' Bank, and the Merchants' National Bank, both of Mandan, N. D., and F. S. Graham, to recover the sum of $4,860 with interest at 6 per cent. per annum from October 10, 1914. By stipulation the case was tried to the court as an equitable action. Judgment was rendered in favor of appellee, and appellants appeal.

The facts appearing in the record are substantially as follows: In the spring of 1913, the Farmers' & Merchants' Bank was in need of funds with which to carry on its business, and its cashier, E. H. McHugh, on March 3, 1913, went to appellee to arrange therefor and took with him certain notes of the Farmers' & Merchants' Bank bearing interest at rates from 6 per cent. to 12 per cent. per annum. Mr. McHugh stated that he would like to indorse the notes for the Farmers' & Merchants' Bank without recourse, whereupon it was agreed that the notes should be delivered to the appellee, the interest thereon figured to their respective maturities at the respective rates which they bore, and that the total sum of principal and interest to the respective maturities should be discounted at 6 per cent. per annum back to March 3, 1913, and the Farmers' & Mer-

chants' Bank given credit on the books of appellee accordingly. It was also agreed that the Farmers' & Merchants' Bank would always maintain an account with appellee to the extent of at least 75 per cent. of the amount for which the Farmers' & Merchants' Bank had been given credit, and when the notes fell due the respective amounts thereof were to be charged to the account of the Farmers' & Merchants' Bank; the appellee allowing interest on daily balances at the rate of 2½ per cent. per annum.

Pursuant to this arrangement, the appellee gave the Farmers' & Merchants' Bank credit for an amount equaling the principal and interest of said notes at the rate which they bore, making a total of $26,918.45, less 6 per cent. per annum to the maturities of the several notes. The Farmers' & Merchants' Bank received the full amount of the credit so obtained. The notes were indorsed by the Farmers' & Merchants' Bank by McHugh without recourse, and McHugh also indorsed them individually. The transaction was entered on the books of appellee under an account with the Farmers' & Merchants' Bank, and the notes there listed. The last of the notes on the list was one made by the Mandan Hospital to the Farmers' & Merchants' Bank, dated October 10, 1912, due on or before two years from date for $4,500 and drawing interest at 8 per cent. per annum. The Farmers' & Merchants' Bank continued to carry a balance in its account with appellee, and, when the amount represented by any note fell due, the appellee charged such amount to this account and forwarded the corresponding note to the Farmers' & Merchants' Bank.

In a few cases the Farmers' & Merchants' Bank forwarded drafts for the amounts due on some of the notes as they became due. In no instance did the original makers of the notes pay directly to the appellee, and all dealings with reference thereto by the appellee were with the Farmers' & Merchants' Bank. All of the notes became due on or before November 29, 1913, except that of the Mandan Hospital for $4,500. The credit given by appellee on its books to the Farmers' & Merchants' Bank was all repaid by the latter except the credit for the Mandan Hospital note. On this note the Farmers' & Merchants' Bank paid one year's interest amounting to $360 in October, 1913. When the note fell due on October 10, 1914, there was due the appellee an amount equal to the principal of $4,500 and one year's interest $360, making a total of $4,860, the amount to recover which this suit was brought.

The amount due is made plain when we consider that the Farmers' & Merchants' Bank had received the principal and interest of the note less 6 per cent. per annum on March 3, 1913. About March 2, 1914, the Farmers' & Merchants' Bank became involved in financial difficulties, and its doors were closed by the state bank examiner of North Dakota. The appellant Graham, who had been a national bank examiner, was called in with others to go over the bank's paper. As a result of this examination, $47,908.26 of the paper was charged off as worthless, thereby wiping out the surplus of $10,000, the capital stock of $30,000, undivided profits of $5,882.29, and loans and discounts $1,814.42.

At this time, also, one J. P. Ernster went to the various stockholders, and obtained $23,000 of the total capital stock of $30,000, giving them a guaranty to protect them against liability. Ernster was thereupon on March 11, 1914, elected president of the bank and was acting as such at the time of the following transaction. Graham and Ernster were in constant consultation regarding the affairs of the bank, and on March 11, 1914, at the same meeting when Ernster was elected president, a resolution was passed by the stockholders levying a 100 per cent. assessment on the stock of the bank. Ernster paid in the full amount of $30,000, $10,000 of which was advanced to him by Graham therefor. $23,000 of this was paid in by Ernster and Graham on account of the stock acquired by them, and $7,000 was paid in by them on account of other stockholders who did not respond. The bank then opened its doors for business. Five days later, while Mr. Ernster was still president and while he and Graham controlled $23,000 of the $30,000 capital stock, a resolution was passed by the three directors who had been elected at the meeting of March 11, 1911, after Ernster and Graham had acquired control, accepting the offer of F. S. Graham to purchase certain assets of the bank as per list for $27,863.10. The list of assets referred to at their face value appears from the evidence to have been $80,193.07. The evidence shows that Graham did not pay any money to the Farmers' & Merchants' Bank for said assets, and the bank did not receive any consideration therefor except the sum of $22,863.10, which was paid by the First National Bank of Fargo for some of the best paper in the list of assets which were sold to Graham. It further appears in the evidence that Graham realized out of the assets other than those sold to the First National Bank of Fargo between $17,000 and $18,000. About June 1, 1914, Graham was elected president of the Farmers' & Merchants' Bank. The bank continued in business until August 31, 1914, on or about which date it was decided to form a national bank and take over the assets of the Farmers' & Merchants' Bank. Graham borrowed of the Farmers' & Merchants' Bank $17,500 for the purpose of aiding in the organization of the appellant Merchants' National Bank, and this loan was approved by the directors of whom Graham was one by resolution of August 25, 1914. Graham used this money and proceeded to obtain a charter for the Merchants' National Bank.

When the national bank was organized, and on August 31, 1914, the three directors of the Farmers' & Merchants' Bank, of whom Graham was one, passed a resolution to sell to the new bank all of its assets of every nature in consideration of $1 and the agreement of the new bank to pay the deposits, time certificates, cashier's checks, and $20,000 of bills payable and two other small items of the old bank. The stockholders' meeting which was held August 29th, controlled by Graham through his own stock and proxies, voted "to dispose of its assets provided said assets shall be sold for enough to pay off the liabilities of this bank as shown by its books on date of sale of said assets." By this same resolution the Farmers' & Merchants' Bank was to return to Ernster and Graham the special assessment levied on the stock in the spring and the emergency fund,

both amounting to $30,000. Graham had in the meantime become the owner of Ernster's interest in the stock and everything else, so he received the whole $30,000. He used this $30,000 to pay for that much more stock in the Merchants' National Bank of Mandan; that is, having a credit by this resolution with the Farmers' & Merchants' Bank of $30,000, he applied $17,500 of it to cancel his note given for the loan of that amount with which he had already purchased stock and paid in the balance for more stock. He transferred some of this stock to other stockholders in the old bank. The $30,000 refunded for the stock assessment of the old bank was not taken over directly by the new bank, but was refunded to Graham and by him turned in to the bank for new stock, or, as he says, "The new bank took $50,000 for the Merchants' Bank and used it as capital stock."

The $30,000 paid in to the old bank as an assessment belonged to that bank, and was a part of its funds. The Merchants' National Bank on the morning of September 1st opened its doors for business in the building of the old bank with the same set of clerks, equipment, and all the assets of the old bank; the only difference being that they brought in $20,000 more capital and proceeded with $50,000 instead of $30,000 capital. There was no closing of the doors except over night. By this transaction the defendant Merchants' National Bank got into its treasury about $30,000 of the assets of the Farmers' & Merchants' Bank which was a trust fund of the old bank for its creditors.

The claim of appellee is about $5,000, and the only other possible claim against the old bank does not exceed $5,000. The evidence shows that the Mandan Hospital note is secured by a mortgage in the ordinary form, dated October 10, 1912, executed by the Mandan Hospital by W. A. Lanterman, president, and E. H. McHugh, secretary, to Lyman N. Cary, trustee, and mortgages all of block 4, Heartview addition to the town of Mandan, to secure the note in question.

On this state of facts, the Farmers' & Merchants' Bank claims: (1) That the transaction of March 3, 1913, between McHugh as its cashier and appellee, constituted a sale of the notes to appellant, and the transaction ended there, so far as it was concerned; (2) admitting the transaction to have constituted a loan, and that the agreement on the part of McHugh that the notes at their respective maturities should be charged to the Farmers' & Merchants' Bank constituted a guaranty of payment, then the guaranty was void by reason of section 5150 of the Statutes of North Dakota; (3) that, if the transaction constituted a loan by appellee to the Farmers' & Merchants' Bank, there is not sufficient evidence to show that F. S. Graham or the Merchants' National Bank received the assets of the Farmers' & Merchants' Bank under such circumstances as would render them liable for appellant's claim.

On the other hand, appellee claims: (1) That the transaction between McHugh and it on March 3, 1913, constituted a loan to the Farmers' & Merchants' Bank of the amount for which the latter received credit, and the notes were taken by appellee as collateral security; (2) that appellants F. S. Graham and the Merchants' National Bank have received all the assets of the Farmers' & Merchants'

Bank under such circumstances as would make them liable to pay the claim of appellee.

[1] The trial court sustained the claim of appellee and rendered judgment accordingly. We are of the opinion that the trial court was clearly right in holding that the transaction of March 3, 1913, constituted a loan by appellee to the Farmers' & Merchants' Bank of the amount of the credit given the latter on the books of the former. No argument can make the case any stronger or different than the facts appearing in the evidence. These facts show to our mind beyond question that the transaction constituted a loan, and that the parties thereto in all their dealings treated it as such.

[2] Section 5150, subd. 8, North Dakota Compiled Laws 1913, quoted in the brief of appellants, did not become effective until July 1, 1913. The law which was in force on March 3, 1913, is found in subdivision 8 of section 4639, Civil Code North Dakota, and reads as follows:

"No such association shall have or carry among its assets at any one time loans dependent wholly upon real estate security, (and they shall only be upon first mortgages) in an amount exceeding one-half of its capital stock and surplus, and in selling or disposing of said loans so made upon real estate security, no such association shall have power to guarantee the payment or collection thereof, and any such guaranty made in violation of this provision shall not be binding upon such association, but shall be upon the person or officer making the same."

As we decide that the transaction between McHugh and appellant constituted a loan with a pledge of the notes as collateral, we are of the opinion the law quoted does not apply.

[3] The loan represented by the Mandan Hospital note was not sold nor disposed of within the meaning of the statute. The word "disposing" as used in the statute means to part with; to alienate. This must be so for the reason that there would be no occasion for the Farmers' & Merchants' Bank to guarantee the payment of a loan, which was simply transferred as collateral security for the payment of a debt for which the bank was already liable according to the result reached by us in this case. No question is made by counsel for appellants as to the authority of McHugh to agree that the notes might be charged to the Farmers' & Merchants' Bank at their maturity. We mention this as the point seems to have been raised in the trial court, but counsel no doubt were convinced that there would be no benefit to be derived from contending that McHugh had no such authority in view of the settled law that, whereas in the case at bar the bank has without question received the money which it is sought to recover and applied the same to its own use and benefit, it could not be heard to question the power and authority of its cashier. Citizens' Bank v. Appleton, 216 U. S. 196, 30 Sup. Ct. 364, 54 L. Ed. 443; Rankin v. Engel Emigh, 218 U. S. 27, 30 Sup. Ct. 62, 54 L. Ed. 915; American Nat. Bank v. Nat. Wall-Paper Co., 77 Fed. 85, 23 C. C. A. 33 (8th Cir.); Planters' Bank v. Union Bank, 16 Wall. 483, 21 L. Ed. 473; Wald v. Wheelon, 27 N. D. 624, 147 N. W. 402; First National Bank v. State Bank, 15 N. D. 594, 109

N. W. 61; Emerado, etc., v. Farmers' Bank, 20 N. D. 270, 127 N. W. 522, 29 L. R. A. (N. S.) 567.

[4] We are also of the opinion that the facts in this case in regard to the transfer of the assets of the Farmers' & Merchants' Bank to Graham and the Merchants' National Bank show a liability upon the part of Graham and the Merchants' National to pay the claim of appellee under the well-known rule established by Louisville Trust Co. v. Louisville, etc., Co., 174 U. S. 674, 19 Sup. Ct. 827, 43 L. Ed. 1130; Chicago, R. I. & P. Ry. Co. v. Howard, 74 U. S. (7 Wall.) 392, 19 L. Ed. 117; Chicago, Mil. & St. P. Co. v. Third Nat. Bank of Chicago, 134 U. S. 276, 10 Sup. Ct. 550, 33 L. Ed. 900; Central Imp. Co. v. Cambria Steel Co., 201 Fed. 811, 120 C. C. A. 121 (8th Cir.); Central Imp. Co. v. Cambria Steel Co., 210 Fed. 696, 127 C. C. A. 184 (8th Cir.), and cases cited.

It is assigned as error that the complaint does not state facts sufficient to constitute a cause of action; but, as this question was not raised in the court below and is not specified as error or argued by counsel for appellants, we must treat the assignment as abandoned.

It results from what we have said that the judgment below must be affirmed, and it is so ordered.

ADAMS, Circuit Judge, concurred in the decision of this case, but deceased before the opinion was prepared.

⟨☞⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes