BON HOMME COUNTY BANK, Appellant, v. DAKOTA NATIONAL BANK, Respondent.

(208 N. W. 825.)

(File No. 5369.   Opinion filed May 18, 1926.)

1. **Banks and Banking—Contracts—Contract. Whereby Bank Indorsed Notes Without Recourse to Another Bank, and Indorsee Credited Indorser with Face Value of Notes, with Right to Charge Notes Against Accounts on Their Falling Due, Held a Loan With Notes as Collateral Security.**

   Contract, whereby one bank indorsed a number of notes to another without recourse, and indorsee credited indorser for face of notes, in order to give indorser a fictitious reserve account, with authority to indorsee to charge account with notes on becoming due, held to be a loan with notes as collateral security.

2. **Banks and Banking—Estoppel—As Respects Right of Set-off, Defendant Bank Held Not Estopped From Asserting That Transaction, Whereby Plaintiff Bank Was Credited With Fictitious Reserve Account on Indorsing Notes to Defendant without Recourse, Was Loan With Notes as Collateral Security, and Not Purchase of Notes.**

Where transaction between plaintiff and defendant banks, whereby defendant credited plaintiff with amount of certain notes indorsed to defendant without recourse, was for purpose of creating a fictitious reserve account for plaintiff, held, that, in action by bank superintendent in name of plaintiff bank to recover alleged account, defendant was not estopped from setting up defense that transaction was merely a loan with notes as collateral security, and not a purchase of the notes without recourse, as respects right to set off the notes against plaintiff bank's deposit in defendant bank.

Note.—See, Headnote **(1)**, American Key-Numbered Digest, Banks and banking, Key-No. 178, 7 C. J. Sec. 445; **(2)** Banks and banking, Key-No. 134(1), 7 C. J. Sec. 351.

Appeal from Circuit Court, Yankton County; Hon. R. B. Tripp, Judge.

Action by the Bon Homme County Bank against the Dakota National Bank. From a judgment for defendant, and an order denying a new trial, plaintiff appeals. Affirmed.

*Wicks & Quinn,* of Scotland, S. D., and *Danforth & Barron,* of Sioux Falls for Appellant.

*C. H. Dillon, of Pierre,* and *French, Orvis & French,* of Yankton, for Respondent.

BURCH, C. This action is brought by the superintendent of banks of this state in the name of the Bon Homme County Bank of Scotland, S. D., against Dakota National Bank of Yankton, S. D., to recover $28,740.25 claimed to be on deposit in defendant bank. The plaintiff suspended business on the 7th of July, 1920, and went into the hands of the superintendent of banks for liquidation. The deposit arose from the following transaction: S. Henry Wenzlaff, president of plaintiff bank, went to Yankton on the 20th day of May, 1920, and there met J. A. Danforth, president of defendant bank. Wenzlaff told Danforth that the reserve of his bank was low and showed Danforth seven notes, the face value of which aggregated $28,740.25. These notes were all in-

dorsed by the plaintiff "without recourse." Wenzlaff indorsed the notes by general indorsement. The notes were then turned over to the defendant bank, and said bank gave plaintiff credit on its books for the face of the notes. Mr. Danforth, in explaining the transaction testified:

"We told Mr. S. Henry Wenzlaff, president of the Bon Homme County Bank, that we would give the bank credit on our books for the face of the notes with the express understanding that the amount should not be subject to withdrawal by them, and only with the understanding that as soon as those notes fell due we had authority to charge them against the account and return the notes to them for collection. He said that, if we would give them credit on our books for the amount that he would authorize us to charge to their account when they fell due and would send us written authority to that effect."

A deposit slip was made out containing these words, "Res. Acct. not subject to check," and plaintiff was given credit for an apparent deposit of said amount of money. The abbreviations "Res. Acct." were explained to mean reserve account. Afterwords a letter was written by the cashier of the plaintiff to defendant which is claimed to be the written authority promised, as follows:

"Bon Homme County Bank.

"Scotland, S. D., June 29, 1920.

"Dakota National Bank, Yankton, S. D.—

Gentlemen: We hereby authorize you to charge any notes which you are carrying for this bank to our account when due, forwarding such together with advice to us. We are,

"Yours very truly,

"Aug Reich, Cashier."

The answer of defendant denies that the plaintiff at any time deposited with the defendant the sum of $28,740.25 or any other sum, and denies that said sum of money was or is subject to payment by defendant to plaintiff upon demand or otherwise. The answer also alleges that on the 20th day of May, 1920, the plaintiff placed with the defendant a number of promissory notes of the face value exclusive of interest in the amount named, and pleads the oral agreement above mentioned, with the letter, which

is claimed to constitute written authority to the defendant to charge all said notes against said deposits: that prior to the 16th of August, 1920, two of said notes purporting to be executed by S. E. Davies and by Matt Arneson became due, and defendant, acting upon plaintiff's written authority, charged said notes to plaintiff's account and sent said notes to plaintiff; that the same were soon thereafter returned to defendant by the superintendent of banks acting through the examiner in charge of the plaintiff bank. The answer also pleads that one or two of the notes were forgeries and that there were numerous false and fraudulent representations made by the said Wenzlaff in negotiating said notes relative to security. One of the notes was paid amounting to about $5,000 and the proceeds of this defendant offers to account for, holding all other notes subject to the order of the plaintiff.

The case was tried to the court, and the court found in favor of defendant and rendered judgment in its favor, and plaintiff appeals from the judgment and order denying new trial.

There is nothing in the contract between the two banks to commend it. The transaction was intended to deceive the banking department and its examiners. Such reserve was fictitious, evading the law requiring maintenance of a reserve account. By indorsing the notes without recourse there was apparently no further liability on the part of the bank making such indorsement, and by this arrangement plaintiff bank showed a large apparent reserve without a corresponding liability.

It is appellant's contention that the defendant is estopped by its own acts from denying its liability in this case, and that the court will construe this as an ordinary legal bank transaction, and will not permit the defendant to escape the legal effect of the transaction, because the defendant acted in violation of, and contrary to, the law.

In determining the questions invoved, it will be necessary to construe the contract made between the two banks. That it was more than a mere deposit of notes with the defendant as bailee is plain. The object of both parties to the transaction was to increase the apparent reserve of plaintiff, The only way this could be done was by an apparent deposit of money or its equivalent.

To give effect to its object and the intention of the parties, it must be construed either as a contract whereby defendant undertook to purchase from plaintiff the notes at their face value, or to make a loan to plaintiff with the notes held as collateral security.

If the first construction of the contract is to be given, then the notes became the property of defendant, and, having been indorsed by plaintiff without recourse, there was no liability on the part of plaintiff, and defendant could have no lien upon or set-off against the deposit, except for the amount of the forged notes upon an implied warranty of genuineness. The indorsing of the notes without recourse constituted a written contract which could not be varied by a contemporaneous oral agreement guaranteeing the notes, notwithstanding the restricted indorsement. This is the construction that plaintiff contends must be placed upon the transaction and urges as error the admission of testimony of the oral agreement.

If the agreement was a loan by defendant to plaintiff with the notes as collateral security, the character of the indorsements is incidental as a part of the agreement embraced in the oral contract creating the loan. For that reason, we construe the contract before entering upon a discussion of the several questions which arise and must be answered.

[1, 2] We find a precedent in the case of Merchants' National Bank of Mandan, N. D., et al. v. First National Bank of Duluth, Minn., 238 F. 502, 151 C. C. A. 438, where the court construed a contract nearly identical in its terms and conditions to be a loan with the notes as security. The defendant did not intend in fact to purchase the notes without recourse. It may have intended to increase the reserve of plaintiff and have it appear as a purchase of the notes, but the actual and true intent was that there should be a repayment of the amount credited. To hold that defendant purchased the notes without recourse is to make a contract between the parties contrary to their actual agreement. But appellant says defendant is estopped by its conduct from claiming the benefits of the true contract. It is not estopped unless its conduct has been such as to mislead another to his prejudice, so that it would work a fraud to allow the true state of facts to be proved. Eickelberg v. Soper, 1 S. D. 563, 47 N. W. 953;

Sutton et al. v. Consolidated Apex Mining Co. et al. 15 S. D. 410, 89 N. W. 1020; Street v. Farmers' Elevator Co., 33 S. D. 601, 146 N. W. 1077; 10 R. C. L. 691.

The plaintiff, being a party to the transaction, with full knowledge of what was intended, and acquiescing in it, could not be defrauded. Unless the fact that the bank is now in the hands of a receiver changes the equities, there can be no estoppel. The receiver represents the bank and its creditors. The defendant may assert its defense against the bank, and, unless such defense is in fraud of its creditors, may assert such defense against the receiver. There is nothing in the evidence indicating the fictitious entries to deceive the banking department changed the position of the creditors to their disadvantage. If, by the means employed, the plaintiff was enabled to keep its doors open longer than it otherwise would have been able to do, it does not appear that anything transpired thereafter that dissipated or lost any of the assets that the bank had at the time of practicing the deception. The evidence is not sufficient to support an estoppel. The defendant having the right to assert its defenses as fully as if the plaintiff was a going concern, plaintiff cannot recover more than is due it after paying the amount of the loan. Under the contract defendant was granted the right to charge the indebtedness of plaintiff, created by the contract, against the deposit, and return the collateral security. Defendant admits collecting one of the notes and offers to pay the proceeds thereof to plaintiff and to return all other notes held as collateral. This may be done and the account closed.

In thus disposing of the case we do not hold such a transaction between banks to be legal. It is illegal, but in a suit brought on behalf, and in the name, of the other party to the illegal transaction, there can be no recovery in favor of one co-conspirator against the other. We do not decide that a bank incurs no liability in thus conspiring to deceive the superintendent of banks, or others composing the state banking department, in order to keep a bank from closing its doors. What the result might be, in a suit brought by or on behalf of defrauded customers of the bank, if it should be shown that during the time such bank was illegally kept open its assets were dissipated or decreased in value, or its liabilities increased, so that, by reason of such conspiracy, de-

positors were damaged, is left open for our consideration when presented. If banks are permitted to show fictitious reserves on their books as valid assets, then the law requiring a bank to maintain a cash reserve is nullified; and the law placing banks under the ·control and subject to examination and supervision of the banking department may as well be repealed. Any bank assisting in such an undertaking to evade the banking laws need not feel aggrieved if in a proper suit it encounters an unsympathetic court.

The judgment and order appealed from are affirmed.

DILLON, J., disqualified, not sitting.